**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____X
NETWORK DATA ROOMS, LLC,

                                                                          Civil Case No.: 22-CV-2299-LGS

                            Plaintiff,

    -v-

SAULREALISM LLC and RYAN SAUL, in her individual
and professional capacities,

                            Defendants.
_____X

**CERTIFICATION OF NICHOLAS J. FORTUNA IN SUPPORT OF PLAINTIFF'S APPLICATION BY ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION AND *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER UNDER F.R.C.P. 65 (a) and (b)**

NICHOLAS FORTUNA, an attorney admitted to practice law before this Court, hereby certifies as follows:

    1.    I am a partner of the law firm Allyn & Fortuna, LLP, attorneys for plaintiff NETWORK DATA ROOMS, LLC (hereinafter, "Plaintiff" or "NDR") in the above-captioned action.

    2.    I submit this Certification in support of Plaintiff's Application by Order to Show Cause for a Preliminary Injunction and Ex Parte Temporary Restraining Order against Defendants SAULREALISM LLC and RYAN SAUL ("Defendants" and/or "Saul"), as follows:

> (a) pending the hearing and determination of this action, enjoining Defendants, and their agents, representatives, employees or anyone else acting on their behalf or in concert with them from destroying, disclosing, transferring, or in any way using any of Plaintiff's confidential, proprietary, and trade secret information including but not limited to, the codebase of the DealTable Virtual Data Room Platform software, and the decompiled source code written by Defendants between September 26, 2021 and January 18, 2022;

> (b) pending the hearing and determination of this action, directing Defendants to turn over to Plaintiff the original and all copies of the codebase of the DealTable Virtual Data Room Platform software and the decompiled source code written by Defendants between September 26, 2021 and January 18, 2022, in their possession, custody, or control; and

(c) pending the hearing and determination of Plaintiff's application for a preliminary injunction, the Defendants and their agents, representatives, employees or anyone else acting on their behalf or in concert with them, are temporarily restrained and enjoined from destroying, disclosing, transferring, or in any way using any of Plaintiff's confidential, proprietary, and trade secret information including but not limited to, the codebase of the DealTable Virtual Data Room Platform software, and the decompiled source code written by Defendants between September 26, 2021 and January 18, 2022.

3. Plaintiff is the owner of certain software and its underlying source code, which it has devoted more than three years in developing for establishing a virtual data room platform identified as "DealTable" for use in the financial industry (hereinafter "DealTable VDR Platform"). The software's codebase and built-out source code constitutes a trade secret belonging to Plaintiff. I

4. As set forth in Plaintiff's Verified Complaint and the accompanying Declarations of Christopher Concannon[1] and David Delorge[2], NDR brings this action against Defendants for, inter alia, misappropriation of trade secrets under the 2016 Defense of Trade Secrets Act, 18 U.S.C. § 1836, *et seq*. ("DTSA") and New York common law, as well as for conversion, and breach of contract, and seeks to recover injunctive relief, actual and consequential damages, exemplary damages, attorney's fees, pre-judgment and post-judgment interest, costs, and such other and further relief deemed just and proper by this Court.

5. In bringing this Action against defendants, NDR seeks to protect and recover its trade secrets, and confidential and proprietary information, consisting of the original codebase for the DealTable VDR Platform and the source code for DealTable VDR Platform written by Saul between September 26, 2021 and January 18, 2022, which Defendants have misappropriated, and NDR fears is at risk of being destroyed or disclosed.

---

[1] Hereinafter referred to as "Concannon Decl."
[2] Hereinafter referred to as "Delorge Decl."

6. After NDR terminated the parties' relationship, Defendants, in breach of obligations under the Consulting Agreement and Non-Disclosure agreement ("NDA") entered into with Plaintiff, deleted the DealTable marketing website, the DealTable application, the DealTable database and database connection, the DealTable website certificates, and the current permissions and user data[3] and it was discovered that Saul stole the entire codebase for the DealTable VDR Platform and is unlawfully withholding from NDR the original source code written by Saul between September 26, 2021 and January 18, 2022, as a work for hire, which is owned by NDR and is a trade secret of NDR's which Saul has refused to return to NDR.

7. As will be shown herein, NDR can meet the heightened standard for obtaining a preliminary injunction that is both prohibitory and mandatory, as there is no question about NDR's ownership rights to the codebase and source code that Defendants have unlawfully misappropriated and which NDR seeks to recover. Additionally, it is noted that under both the Consulting Agreement and NDA that Defendants have breached as a result of the conduct NDR seeks to enjoin, Defendants acknowledge NDR's entitlement to injunctive relief and the "substantial and irrevocable damage" that would result from Defendants' breach. *See* Ex. "A" to Concannon Decl. at ¶ 4 and Ex. "B" to Concannon Decl. at ¶ 12.

8. NDR has already filed a complaint against Saul for cybercrimes with the New York District Attorney's Office and the Federal Bureau of Investigations related to Defendants' conduct as described in the Verified Complaint and an investigation is ongoing.

9. As detailed in the Delorge Decl., Saul's actions on January 18, 2022 in deleting the DealTable databases, applications, websites, and other property, were intentional and malicious. Not only did Saul embed re-write code in the database on the morning of January 18, 2022, which

---

[3] Many of the deleted items were recovered except the DealTable application which was only partially recovered and the database connection which has not been recovered.

she deployed later in the day after NDR terminated her services for a second time, Saul also removed all administrative privileges to the Webapp in order to prevent Delorge and NDR from accessing the Webapp, and admitted to Delorge to having deleted the DealTable services because according to Saul NDR "deserved it." In addition, Saul made numerous attempts to regain access to NDR's DealTable systems after she was blocked from using the system. The foregoing actions by Saul demonstrate the grave risk of loss of NDR's proprietary and confidential information and trade secrets absent the immediate injunctive relief sought by Plaintiff.  *See* Delorge Decl. at ¶35.

10. As shown in Plaintiff's moving papers, the missing source code from September 26, 2021 through January 18, 2022 is necessary in order for NDR to make the edits and updates needed to the source code to complete the development of the DealTable VDR Platform. Moreover, the stolen decompiled source code constitutes a trade secret of NDR because it is the basis for the additional features that make the DealTable VDR platform superior to its competitors and will provide NDR with a competitive advantage over existing virtual data room providers.

11. NDR went to great lengths to protect its trade secret through the implementation of complex security protocols and the robust confidentiality and nondisclosure provisions that Defendants were contractually bound to follow.

12. Moreover, there is no question that Saul was provided access to the codebase for the DealTable VDR Platform solely for the purpose of carrying out her duties as Lead Developer and was required to save all code work she performed into NDR's secure Azure DevOps Source Code Repository, and for which she was paid approximately $154,000.00 in consulting fees.

13. Defendants breached their duties and took advantage of their position of trust to access and steal NDR's secured information.  NDR has been advised by Delorge that Saul's unlawful retention of the decompiled source code prevents NDR from adding additional features,

editing existing features or from making any future updates to the DealTable VDR Platform. In fact, prior to commencing this litigation, NDR retained the services of a Full Stack developer to try to rebuild the missing decompiled source code but he was unable to do so and NDR had to terminate his services.

14. NDR needs the court's assistance in protecting its stolen decompiled source code because it is the basis for the additional features that make the DealTable VDR platform superior to its competitors and will provide NDR with a competitive advantage over existing virtual data room providers.

15. Saul's actions have paralyzed NDR's ability to complete the project and launch the DealTable VDR Platform, which it has been working towards for the last three years, and on January 18, 2022, was only a month or two from completing.

16. The more time that Saul is allowed to maintain possession and control of NDR's source code, the greater the possibility that she may destroy it or disclose it to NDR's competitors.

17. This would be extremely harmful to NDR because without its code, it would likely take NDR's competitors years to replicate and install the features of the DealTable VDR platform into their existing virtual data room platforms.

18. For the reasons stated above, neither I, nor anyone from plaintiff NDR, has, to the best of my knowledge, publicized this Application for a temporary restraining order, nor should it be required to notify Defendants of this application, as doing so creates a significant risk that Defendants will destroy the decompiled source code to avoid having to turn it over to Plaintiff or disclose it to NDR's competitors, causing NDR irreparable harm.

19. Accordingly, NDR's motion for a temporary restraining order preventing the disclosure and destruction of the decompiled source code from September 26, 2021 through

January 18, 2022, and for a preliminary injunction, including a mandatory injunction directing Saul to return the stolen source code, should be granted.

Dated: March 22, 2022

_____
NICHOLAS J. FORTUNA