EXHIBIT A

## **NONDISCLOSURE AGREEMENT**

This NONDISCLOSURE AGREEMENT (this "Agreement") is entered into as of this 12th day of December, 2020, by and between Network Data Rooms, LLC with its principal place of business at 257 West 38th Street, 2nd Floor, New York, NY 10018 ("NDR") and Ryan Saul, having an address at ___828 N GRANT AVE SPRINGFIELD MO 65802___ (the "Receiving Party") (each a "Party" and collectively the "Parties").

WHEREAS, NDR is the owner of certain software it seeks to upgrade and build out for the purpose of launching a new platform, offering virtual data room and deal making capabilities for complex and high-volume transactions (the "Software");

WHEREAS, the Receiving Party is an individual that provides full stack software development services with a focus on backend development (the "Service");

WHEREAS, the Parties are negotiating and contemplating entering into an agreement whereby the Receiving Party will provide the Services to NDR in connection with its upgrade and build out of NDR's Software.

WHEREAS, as part of the negotiation, the Receiving Party will have access to NDR's confidential information related to, *inter alia,* design and coding of NDR's Software and NDR's future business and marketing plans for the use of the Software, as well as plans for further development and enhancement of the Software for other business purposes, which NDR has deemed to be proprietary and confidential information that it seeks to protect;

NOW THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. <u>Confidential Information.</u> For purposes of this Agreement, "Confidential Information" means any proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, business plans or models, marketing plans, product plans, product strategies, products, services, computer software and code, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, customer lists, prospective investor lists and strategies, pricing policies, operational methods, marketing, finances or other business information disclosed by NDR (the "NDR Confidential Information") either directly or indirectly in writing, orally or by drawings or inspection of parts or equipment or owned by NDR even though not delivered by the Parties. It is understood that all of the NDR Confidential Information is and shall remain the sole property of NDR. Upon NDR's request, the Receiving Party shall promptly return to NDR all such tangible Confidential Information.

2. <u>Confidentiality Obligation.</u> It is understood that unauthorized disclosure or use, whether intentional or unintentional, of any of the Confidential Information would be detrimental to NDR. Therefore, the Receiving Party agrees to the following:

a. The Receiving Party agrees to use NDR Confidential Information solely to fulfill his/her obligations under this Agreement, during the contemplated negotiations, and throughout the term of any contract or agreement that results therefrom.

b. The Receiving Party shall treat as confidential and not disclose to any third party any NDR Confidential Information and shall not use such Confidential Information for its own benefit. Without limiting the foregoing, the Receiving Party shall use at least the same degree of care which it uses to prevent the disclosure of its own Confidential Information of like importance, but in no event with less than reasonable care, to prevent the disclosure of NDR's Confidential Information. The Receiving Party further agrees to take all reasonable precautions to prevent any unauthorized disclosure or use of any NDR Confidential Information.

c. Unless required by law, the Receiving Party shall not make NDR's Confidential Information available in any form to any third party or to use NDR's Confidential Information for any purpose other than the implementation of this Agreement and any subsequent agreement for the provision of the Service.

d. Any dissemination of NDR's Confidential Information shall be only in connection with the Authorized Purpose, and shall only be disclosed by the Receiving Party to his/her advisors, agents or affiliates who have a need to know said Confidential Information in order for the Receiving Party to carry out proper purposes and responsibilities related to the negotiation of the any subsequent agreement for the provision of the Service and related business transactions, and who have been advised of the confidential nature of such information. Further, the Receiving Party shall cause such advisors, agents and affiliates to which it has given access to the Confidential Information to comply with the terms and provisions of this Agreement in the same manner as each Party is bound hereby, and accept responsibility for the actions and unauthorized disclosures of such representatives.

e. The Parties agree that existence of this Agreement, the negotiations contemplated herein, and any contract or agreement that results, as well as the terms and conditions thereof, shall be treated as Confidential Information and that no reference to its existence or the terms and conditions of this Agreement may be made by the Receiving Party.

f. In the event the transactions contemplated hereby are not consummated, upon termination of the discussions between the Parties, or upon either Party's written request, each Party hereto will, and will cause its respective Representatives to, promptly (and in no event later than five [5] business days after such request) redeliver or cause to be redelivered all copies of documents and information furnished by the other party in connection with this Agreement or the transactions contemplated hereby and destroy or cause to be destroyed all notes, memoranda, summaries, analyses, compilations and other writings related thereto or based thereon prepared by the party furnished such documents and information or its Representatives. Each Party will certify that the provisions of this paragraph have been complied with.

3. <u>Exclusions.</u>  Notwithstanding the provisions of Section 1, Confidential Information shall exclude information that any the Receiving Party can demonstrate: (a) is or becomes a part of the public domain through no act or omission of the Receiving Party; (b) was in the Receiving Party's lawful possession prior to the disclosure and had not been obtained by the Receiving Party either directly or indirectly from NDR; (c) is lawfully disclosed to the Receiving Party by a third party without restriction on disclosure; (d) is independently developed by the Receiving Party; or (e) is required to be disclosed by any judicial or governmental requirement or order (provided that the Receiving Party timely advises NDR of the governmental demand for disclosure).

4. <u>Remedies.</u>  The Receiving Party's unauthorized use of Confidential Information will diminish the value of such information. Therefore, the Receiving Party agrees and acknowledges that any breach of the Receiving Party's obligations with respect to confidentiality or use of Confidential Information hereunder shall entitle NDR to equitable relief to protect its interest therein, including injunctive relief, as well as money damages.

5. <u>Required Disclosure.</u>  In the event the Receiving Party believes that his/her will be compelled, or is compelled, by a court, administrative agency, or other governmental body to disclose Confidential Information received under this Agreement, his/her shall: (i) provide prompt notice thereof to NDR so that the Receiving Party can take steps to oppose such disclosure, and (ii) cooperate with NDR's reasonable attempts to oppose such disclosure, and (iii) use reasonable efforts to obtain a protective order or otherwise prevent unrestricted or public disclosure of such information.

6. <u>Waiver.</u>  It is further understood and agreed that no failure or delay by any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder. The execution of any contract or agreement contemplated herein or the termination of the discussions or relationship between the Parties shall not relieve any Party or its advisors, agents or affiliates of the obligations of non-use or nondisclosure hereunder or the obligation to return or destroy certain materials.

7. <u>Choice of Laws; Severability; Modification.</u> This Agreement shall be governed by and construed and interpreted in accordance with the substantive laws of the State of New York. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision hereof shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement. All obligations and rights of the Parties expressed herein shall be in addition to, and not in limitation of, those provided by applicable law. This Agreement may be modified or waived only by a separate writing by the Parties expressly so modifying or waiving such. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument. References to the Parties shall be deemed to include each of their affiliates, if any. Any disputes arising out of this Agreement shall be venued in federal or state court in the State of New York, and each Party hereby consents to the jurisdiction

11

of such court. This Agreement shall be binding upon the Parties hereto and their successors and assigns.

[Signatures on the following page]

4

Case 1:22-cv-02299-LGS   Document 9-2   Filed 03/25/22   Page 6 of 6

12

IN WITNESS WHEREOF, the Parties acknowledge their agreement to the foregoing as of the date first set forth above by execution of the Agreement by their respective authorized representatives.

NETWORK DATA ROOMS, LLC

Name: Jack Concannon
Title: CEO
Signature: *[signed]*
Date: 12/14/2020

RYAN SAUL

Name: Ryan Saul
Signature: *[signed]*
Date: 12-14-2020

5