**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**NETWORK DATA ROOMS, LLC,**

                      **Plaintiff,**         Civil Case No.: 22-cv-02299-LGS

    -v-

**SAULREALISM LLC and RYAN SAUL, in**
**Her individual and professional capacities,**

                      **Defendants.**

MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER UNDER F.R.C.P. 65 (a) and (b)

 

Renee M. Wong, Esq.
Goldberger & Dubin, P.C.
*Of Counsel*
401 Broadway, Suite 306
New York, New York 10013
(212) 431-9380
Renee@wonglaw.net

## **TABLE OF CONTENTS**

Preliminary Statement.......................................................................................... 1

Statement of Facts................................................................................................ 2

Argument ………………………………………………………………… 3

    I.   PLAINTIFF FAILED TO MEET THE REQUIREMENTS FOR OBTAINING A PRELIMINARY INJUNCTION ………………….  3

        a.  NDR is Not Likely to Prevail on the Merits of its Claims ……....... 4

        b.  NDR has Not Suffered Irreparable Harm …………………………. 6

Conclusion ………………………………………………………………... 6

i

# **TABLE OF AUTHORITIES**

Cases

*Estee Lauder Cos. V. Inc. V. Batra,*, 430 F. Supp. 2d 158, 176 (S.D.N.Y. 2006)……...... 6

*ExpertConnect, L.L.C. v. Fowler*, No. 18 Civ. 4828 (LGS) 2019 U.S. Dist. LEXIS 114931 (S.D.N.Y. July 10, 2019) ……..……………………………………………….  4

*Integrated Cash Mgmt. Servs., Inc. v. Digit. Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990) ……………………………………………………………………….....  4

*N. AM. Soccer League*, LLC v. U.S. Soccer Fed., Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018).. 3

*N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)……  3

*Zervos v. Verizon N.Y., Inc*., 252 F.3d 163, 172 (2d Cir. 2001) …………………………. 3


Federal Statutes and Rules

F.R.C.P. 65 ………………………………………………………………………………     1

2016 Defense of Trade Secrets Act, 18 U.S.C. § 1836, *et seq*. ("DTSA") …………...    1,4

18 U.S.C. § 1839 …………………….…………………………………………………..     4

## PRELIMINARY STATEMENT

Defendant SaulRealism LLC and Ryan Saul ("Defendants"), by its attorneys Goldberger & Dubin, P.C., submits this Memorandum of Law in opposition to the Plaintiff Network Data Rooms, LLC's (hereinafter "NDR"), Application for a Temporary Restraining Order and Preliminary Injunction, pursuant to F.R.C.P. 65, enjoining and restraining defendants from destroying, disclosing, transferring, or in any way using any of Plaintiff's confidential, proprietary, and trade secret information including but not limited to, the codebase of the DealTable Virtual Data Room Platform software, and the decompiled source code written by Defendants between September 26, 2021 and January 18, 2022. Defendants oppose Plaintiff's requested relief seeking an Order directing the Defendants to turn over to Plaintiff the original and all copies of the codebase of the DealTable Virtual Data Room Platform software and the decompiled source code written by Defendants between September 26, 2021 and January 18, 2022, in their possession, custody, or control.

NDR alleges that the Defendants have misappropriated trade secrets as a violation of the 2016 Defense of Trade Secrets Act, 18 U.S.C. § 1836, *et seq*. ("DTSA"), and New York common law, as well as for conversion, breach of contract, and seeks to recover and protect the original codebase for the DealTable Virtual Data Room Platform (hereinafter "DealTable VDR Platform"), written by the Defendants between September 26, 2021 through January 18, 2022.

The Defendants do not contest that the Plaintiff is the rightful owner of any codebase that was developed in furtherance of the DealTable VDR Platform. The Defendants deny ever having downloaded NDR's source code. The Defendants do not have possession of the source code or any of the Plaintiff's proprietary trade secrets. Ultimately, the Defendants can consent to

paragraph's (a) and (c) of the Plaintiff's request as they do not possess the codebase, and therefore cannot destroy, disclose, transfer, or in any way use the codebase.

The Defendants cannot comply with paragraph (b) of the Plaintiff's requested relief to return the source code. The Defendants cannot return something that is not within their possession, custody, or control. Plaintiff fails to show by clear and convincing evidence that the Defendants possess this code at all.

In support of Plaintiff's application, Plaintiff has submitted Declarations of Christopher Concannon (hereinafter "Concannon Decl.") and David Delorge (hereinafter "Delorge Decl."). Plaintiffs have included three exhibits, including a Nondisclosure Agreement, a Consulting Agreement, and one email communication between David Delorge and Defendant Ryan Saul confirming that Ryan Saul was checking in code to a new branch. Plaintiff's application fails to append any demonstrative evidence showing that the Defendants possess the code. These allegations are made by David Delorge. As shown by the appended Declaration of Ryan Saul (hereinafter "Saul Decl."), David Delorge has been an aggrieved consultant for the Plaintiff that has been involved in several disputes with ownership. David Delorge has threatened to "take the code and run" far prior to the events occurring on January 18, 2022.  The Defendants have established in opposition that there are serious questions of fact regarding Plaintiff's claims and the veracity of the declarations in support.

## STATEMENT OF FACTS

The Court is respectfully referred to the accompanying Declaration of Ryan Saul, executed April 11, 2022 for a full recitation of the facts relevant to this memorandum in opposition.

**ARGUMENT**

**I.     PLAINTIFF FAILS TO MEET THE REQUIREMENTS FOR OBTAINING A PRELIMINARY INJUNCTION**

A party seeking a preliminary injunction ordinarily must show: (a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 172 (2d Cir. 2001).

The Plaintiff's requested relief sought in paragraphs (a) and (c) do not change the status quo. The Defendants will not destroy, disclose, transfer, or in any way use the codebase. The relief requested in paragraph (b) to produce the NDR codebase, would modify the status quo. It would require the Defendant to take action to modify the current conditions. If the injunction would modify the status quo, then the moving party must "meet a heightened legal standard by showing 'a clear or convincing substantial likelihood of success on the merits." *N. AM. Soccer League, LLC v. U.S. Soccer Fed., Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018) (quoting *N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).

Plaintiffs have failed to append any demonstrative evidence that shows that the Defendants have violated the DTSA or common law state claims. The Saul Decl., contains sworn statements that directly contest the allegations as set forth in the Delorge Decl. The Delorge Decl., contains conclusory allegations, which are not supported exhibits. Due to the substantial questions of fact in this case, including a sworn statement by the Defendant Ryan Saul that he does not possess the codebase, the Plaintiff has failed to meet the clear and convincing substantial likelihood of success on the merits.

### a. NDR is Not Likely to Prevail on the Merits of its Claims

The DTSA provides a private right of action for "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The DTSA defines the "owner" as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." *Id.* § 1839(4).

The DTSA defines "trade secret" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," so long as: (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

In assessing DTSA claims, courts in this Second Circuit often look to New York trade secret law. *See ExpertConnect, L.L.C. v. Fowler*, No. 18 Civ. 4828 (LGS) 2019 U.S. Dist. LEXIS 114931 (S.D.N.Y. July 10, 2019). Under New York law, "[a] plaintiff claiming misappropriation of a trade secret must prove: (1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Integrated Cash Mgmt. Servs., Inc. v. Digit. Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990) (internal quotation marks omitted).

First Defendants do not contest in this early stage of litigation Plaintiff's assertion that the DealTable code base and decompiled source code are a "trade secret" as defined by the DTSA

for the purposes of resolving the Plaintiff's Application for a preliminary injunction.[1] The Defendants acknowledge that there were a number of security measures put into place, including the requirements for the Defendant to only access the code base from a secure Virtual Desktop and to "check in" all source code into the NDR Azure DevOps Source Code Repository. Defendants also acknowledge that NDR is the owner of all code developed as a "work for hire."

Plaintiffs have failed to demonstrate that the defendants have misappropriated DealTable's trade secrets. Defendant Ryan Saul performed all coding work on his assigned Azure Virtual Desktop and saved all source code on NDR's secure Azure DevOps Source Code Repository, at all times. The only exception was when Mr. Saul was requested to use other servers very early on during his consultancy.

Ryan Saul never downloaded the source code on September 26, 2021 or any other time. He never used a personal machine to code. He did create a new "branch" of a repository, but he uploaded new code as instructed by NDR management.

Although NDR took several steps to maintain security of the proprietary information, NDR also gave all members participating in the project administrative credentials. Anyone who is an administrator could log in and act on another individual's account. Ryan Saul affirmatively denies possessing NDR's source code. Plaintiff fails to allege that the Defendants are using the NDR code for their own use or financial gain.

Similarly, the New York State claims for misappropriation, conversion, and breach of contract are just as likely to fail because Plaintiff will not be able to demonstrate that the Defendants took possession of the code.

---

[1] Defendants reserve the right challenge the scope of the NDR's trade secrets throughout the litigation as discovery progresses. Defendants also contest the actual scope of "misappropriation" and deny in whole that there was a violation of the Nondisclosure Agreement or the Consulting Agreement.

### b. NDR has Not Suffered Irreparable Harm

Plaintiff has failed to even allege non-speculative irreparable harm. Plaintiff only asserts the missing code is from September 26, 2021 through January 18, 2022. By Plaintiff's own statements, there was a significant three-year investment of time and code development involved. Additionally, Ryan Saul was working on a side-project for two months at the request of Thomas Concannon, detracting from his time on the actual DealTable code. Plaintiff has failed to credibly assert that a new developer could not replace the pre-existing code written in approximately three months.

Plaintiff has failed to allege that the Defendants with knowledge of any trade secrets are presently in communications with any competitor. *See Estee Lauder Cos. V. Inc. V. Batra,*, 430 F. Supp. 2d 158, 176 (S.D.N.Y. 2006) (finding that the plaintiff established irreparable harm where that defendant with knowledge of trade secrets violated a restrictive covenant and was presently working for a direct competitor). The are no allegations that the Defendants have disseminated, or even threated to disseminate proprietary information to a competitor.

Defendants do not possess the NDR code, therefore no relief granted in a preliminary injunction will alleviate the speculative irreparable harm asserted by the Plaintiff. It is respectfully requested that the Saul Decl. be satisfactory in showing that the Defendants are not in possession of NDR's codebase.

### **CONCLUSION**

For all the foregoing reasons, the Court should deny the Plaintiff's application in its entirety, together with such other and further relief as the Court deems just, equitable, and proper.

Dated:  New York, New York
       April 11, 2022

                                        Respectfully submitted,

                                        Goldberger & Dubin, P.C.

                                        /s/Renee M. Wong
                                        Renee M. Wong, Esq.
                                        *Of Counsel*
                                        401 Broadway, Suite 306
                                        New York, New York 10013
                                        Tel: (212) 431-9380
                                        Email: renee@wonglaw.net