UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

NETWORK DATA ROOMS, LLC,

                                                                     Civil Case No.: 22-CV-2299-LGS

                                      Plaintiff,

      -v-

SAULREALISM LLC and RYAN SAUL, in her individual
and professional capacities,

                                      Defendants.
_____X

## CERTIFICATION OF NICHOLAS J. FORTUNA DECLARATION IN FURTHER SUPPORT OF PLAINTIFF NETWORK DATA ROOMS, LLC'S MOTION FOR A PRELIMINARY INJUNCTION

NICHOLAS FORTUNA, an attorney admitted to practice law before this Court, hereby certifies as follows:

1.      I am a partner of the law firm Allyn & Fortuna, LLP, attorneys for plaintiff NETWORK DATA ROOMS, LLC (hereinafter, "Plaintiff" or "NDR") in the above-captioned action.

2.      I submit this Certification in further support of Plaintiff's Application for a Preliminary Injunction against Defendants SAULREALISM LLC and RYAN SAUL ("Defendants" and/or "Saul").

3.      As demonstrated in Plaintiff's moving papers and its reply Declarations of Thomas Concannon[1] and David Delorge[2], Plaintiff has made the requisite showing entitling it to a preliminary injunction. There is no question that Plaintiff is the owner of certain software and its

---

[1] Hereinafter referred to as "Concannon Decl."
[2] Hereinafter referred to as "Delorge Decl." We advise the court that the Delorge Reply Declaration exceeds the 10-page limitation imposed by the court. It is submitted that the excess pages are due to the screenshot exhibits that for ease of reference are embedded into the declaration in addition to being attached in a larger format as separate exhibits.

underlying source code, which it has devoted more than three years in developing for establishing a virtual data room platform identified as "DealTable" for use in the financial industry (hereinafter "DealTable VDR Platform").

4. In granting Plaintiff's application for a TRO, the court focused on Plaintiff's DTSA claim, as do Defendants in their opposition. Therefore, Plaintiff too will limit its reply to showing that Defendants' opposition papers fail to overcome the overwhelming evidence showing that Defendants' misappropriated NDR's trade secret.

5. The DTSA provides a federal cause of action to the owner of a trade secret for the misappropriation of a trade secret that is "related to a product or service used in, or intended for use in, interstate or foreign commerce." *See* 18 U.S.C. § 1836(b). "Misappropriation" is defined within DTSA as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." *See* 18 U.S.C. 1839 (5)(A). The DTSA defines "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy[.]" *See* 18 U.S.C. 1839 (6)(A).

6. Firstly, Defendants Saul admit in their opposition papers that the software's codebase and built-out source code constitutes a trade secret belonging to Plaintiff and is entitled to protection. Instead, Defendants Saul's entire opposition to Plaintiff's application is based on demonstrably false self-serving allegations that he[3] (i) does not have a Github repository or account, that he performed all code development work on the Virtual Desktop assigned to him by NDR, (ii) saved (committed) all code into NDR's secure Microsoft Azure repository ("NDR Repository"), (iii) deployed all code to the DealTable application from the NDR repository or assigned Virtual Desktop; and (iv) is not in possession of the source code or codebase.

---

[3] NDR was under the belief that Ryan Saul was female. I was advised by Ryan Saul's attorney that Ryan is male. Therefore, he is referred to as male throughout NDR's reply papers.

7. However, the entirety of Defendants' opposition papers, have been shown to be false by the exhibits annexed to the Delorge Reply Decl., upon which his Declaration dated March 22, 2022 is based. I previously provided many of the exhibits which illustrate the allegations of wrongdoing asserted against Saul by Plaintiff NDR, to Saul's attorney on April 6, 2022. A copy of the email with attachments is annexed hereto as Exhibit "A."

8. I also note that the statement by Saul's attorney that Plaintiff's only evidence that Defendants have stolen or deleted code is a "declaration from consultant David Delorge" is misleading in light of the information we provided to Defendants' attorney, after they appeared in the action.

9. Not only do Saul and his attorney fail to disclose to the court that they were provided with this information by me, Saul completely fails to address the significance of this evidence in his Declaration and proceeds to submit allegations that are entirely refuted by the contents of the screenshots.

10. As described in detail in the Delorge Reply Decl., the Virtual Desktop that was assigned to Saul does not contain any of the source code, compiled or decompiled that he worked on between September 26, 2021 and January 18, 2022, as evidenced by the fact that no files are saved in the Virtual Desktop's file folder. *See* Delorge Ex. "B." In addition, the Deployment Process Logs for code written by Saul, show that not all deployments were made from NDR's secure Azure DevOps account, repository or Saul's Virtual Desktop and that some deployments including the most recent one on January 13, 2022, was made from a Github account. The manner by which the deployment records are store and the deployment information is different *Cf.* Exs. "C" and "D" to Delorge Reply Decl. Additionally, the last time any source code was saved in the

"Ryan Development" branch on NDR's Repository was June 24, 2021. *See* Ex. "G." to Delorge Reply Decl.

11. I further submit that Saul's claim that he does not have a Github account or repository are not true. Firstly, in reviewing what programs were installed in Saul's Virtual Desktop, Delorge found he had the GIT (Github) program installed on his virtual desktop. *See* Delorge Reply Decl. and Ex. "E" thereto.

12. In addition, on April 8, 2022, I contacted Github's legal department to inform it of the TRO that was in place in order to ensure that the source code maintained in Saul's Github repository was being preserved. I provided Github with the location ID from where Saul last deployed source code to the DealTable application on January 13, 2022—"**fa2b61e5-b946-401c-8547-9f71e1a33e6b.**"

13. In response, I was contacted by Dan Velton from Github's legal department who confirmed to me that "**fa2b61e5-b946-401c-8547-9f71e1a33e6b**" is a Github generated user identification (GUID) but that he also needs the user name associated with the GUID in order to identify the repository. NDR was not in possession of this information and as a result Github could not identify the repository from where Saul deployed the NDR source code he worked on between September 26, 2021 and January 18, 2022. Nevertheless, through the information provided by Github, it is evident that contrary to Saul's allegations, he does, in fact, have a Github account.

14. Also shown to be false are Saul's claims that NDR did not follow standard operating procedures regarding administrative privileges in an attempt to shift the blame to NDR for Saul's misconduct or to claim that NDR did not adequately protect its trade secret. The only individuals with administrative privileges were David Delorge, the Chief Cloud Architect and Cloud Security Engineer, the owners of NDR, and Saul, who was the project developer.

4

15. Additionally, as described in the Delorge Reply Decl., he ensured that everyone with access to NDR's Microsoft Azure account had a Single Sign on password with multi-factor security. Through this process any time someone logs in to the account, Microsoft Azure verifies that the person logging in is the authorized user by verifying the identity of the person through a private password and a unique code sent to the mobile phone number listed on the person's account. It was always the intent and policy of NDR to maintain the security and confidentiality of its trade secrets.

16. Additionally, Saul's denial of having deleted the DealTable website, marketing site, application, database and database connection, website certificates, and the current permissions and user data is shown to be false by Exhibit "I" annexed to the Delorge Reply Decl., which consists of an activity log for the events transpiring on January 18, 2022, immediately after Saul's final termination. The Activity Log shows that activity log shows that Saul initiated the event "Delete website" from the account associated with Saul's DealTable email address (rsaul@dealtable.com).

17. As shown in NDR's moving papers and its reply papers, Plaintiff can meet the heightened standard for obtaining a preliminary injunction that is both prohibitory and mandatory, as there is no question about NDR's ownership rights to the codebase and source code that Defendants have unlawfully misappropriated and which NDR seeks to recover.

18. NDR has shown that the source code written by Saul between September 26, 2021 and January 18, 2022 was **never** saved in NDR's repository or created on Saul's Virtual Desktop provided by NDR, and was, instead, deployed by Saul from somewhere other than the NDR Repository. Therefore, in light of the numerous inaccuracies permeating through Declaration, Saul's claim of not being in possession of the source code and blanket denial of wrong doing is

not credible and is insufficient to overcome NDR's showing of the heightened standard of a likelihood of success on the merits for a mandatory injunction, on its DTSA claim.

19. Additionally, NDR has shown that it has suffered irreparable harm as a result of Saul's conduct. As detailed in Plaintiff's moving papers, the missing source code from September 26, 2021 through January 18, 2022 is necessary in order for NDR to make the edits and updates needed to the source code to complete the development of the DealTable VDR Platform. NDR has been advised by Delorge that Saul's unlawful retention of the decompiled source code prevents NDR from adding additional features, editing existing features or from making any future updates to the DealTable VDR Platform. At no time does Saul deny this fact.

20. Instead, Saul tries to minimize the importance of the code he wrote during this time by arguing that he was asked to work on a "side project" for two months, which is demonstrably false. The entire focus of the development project was to complete the DealTable VDR Platform as soon as possible.

21. Furthermore, there is no question that Saul's actions have paralyzed NDR's ability to complete the project and launch the DealTable VDR Platform, which it has been working towards for the last three years, and on January 18, 2022, was only a month or two from completing. Plaintiff attempted to rebuild the missing decompiled source code by hiring a Full Stack developer, but the developer was unable to rebuild the code.

22. It is also not essential for NDR to show that Saul is either working for a competitor or has disseminated its trade secret to establish that it will suffer irreparable harm absent an injunction. As detailed in Plaintiff's memorandum of law in support filed as part of Plaintiff's moving papers, misappropriation of a trade secret gives rise to a rebuttable presumption of irreparable harm, which Saul has failed to rebut.

23. Moreover, even absent a rebuttable presumption of irreparable harm, Defendants' unlawful retention of the decompiled source code prevents NDR from completing the development and launching the DealTable VDR Platform is likely to cause the loss of potential business opportunities and goodwill. Courts have found that a movant has shown sufficient risk of irreparable harm by showing that absent a preliminary injunction it is threatened with the loss of goodwill and/or business relationships. *See Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 34 (2d. Cir. 1995).

24. Additionally, Saul does not dispute that NDR was working toward launching the DealTable VDR Platform at the Venture Summit Digital Connect scheduled for March 29, 2022 through March 31, 2022, which would have afforded NDR a valuable opportunity to meet tech investors and secure future funding for its business. NDR was deprived of this opportunity because it has been unable to complete the DealTable VDR platform without the decompiled source code. As a result, it has been forced to forgo the opportunity to secure potential investors and the opportunities that could be derived from its participation in the program including publicity and exposure to potential customers in the financial industry. Such a lost opportunity to secure "potential investors" has been recognized by the courts as evidence of irreparable harm. *See N. Am. Soccer League, LLC v. United States Soccer Fedn., Inc.,* 296 F. Supp. 3d 442, 459 (E.D.N.Y. 2017)

25. The more time that Saul is allowed to maintain possession and control of NDR's source code, the greater the possibility that he may destroy it or disclose it to NDR's competitors, which would be extremely harmful to NDR because without its code, it would likely take NDR's competitors years to replicate and install the features of the DealTable VDR platform into their

existing virtual data room platforms. Therefore, NDR has shown that it will suffer irreparable harm absent an injunction.

26.  For the reasons stated in NDR's moving papers and reply papers, NDR's motion for a preliminary injunction, including a mandatory injunction directing Saul to return the stolen source code, should be granted.

Dated: April 18, 2022

_____
NICHOLAS J. FORTUNA