**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____X
NETWORK DATA ROOMS, LLC,                               Civil Case No.: 22-CV-2299-LSG
                        Plaintiff,

    -v-

SAULREALISM LLC and RYAN SAUL, in her individual
and professional capacities,
                        Defendants.
_____X

### DECLARATION OF THOMAS CONCANNON IN FURTHER SUPPORT OF PLAINTIFF NETWORK DATA ROOMS, LLC'S MOTION FOR A PRELIMINARY INJUNCTION

THOMAS CONCANNON, pursuant to 28 U.S.C § 1746, hereby declares as follows:

1. I, along with my father, Christopher Concannon and brother Jack Concannon, am a member of Network Data Rooms, LLC ("NDR"). I submit this Declaration in further support of NDR's motion for a preliminary injunction and to address the falsehoods submitted by Ryan Saul[1] in his Declaration.

2. As shown in NDR's moving papers, NDR is entitled to the injunctive relief sought in its motion. It was shown in NDR's moving papers, and admitted to by Saul in his declaration, that the codebase and decompiled source code stolen at issue in this action, constitutes a trade secret entitled to protection under the DTSA. The only reason given by Saul as a basis for denying the requested injunctive relief, is the unsupportable and false claim that he neither stole the code nor remains in possession of the code. As shown by NDR in its moving papers, herein, and through the declaration of David Delorge and documents attached thereto, Saul unlawfully downloaded the codebase for NDR's Dealtable VDR Platform, wrote the source code the DealTable VDR Platform

---

[1] Throughout the entire time I worked with Ryan Saul, based on conversations had with Ryan, I believed Ryan to be a woman and at no time did Ryan state anything to the contrary. I have been advised by NDR's counsel that Ryan's attorney has indicated that Ryan is male. Although, I do not see that Ryan addresses this issue in his/her declaration, I will respect Ryan's wishes and refer to him as male.

1

between September 26, 2021 and January 18, 2022 on a machine, other than the Azure Virtual Desktop assigned to him, and was in possession of the decompiled code at the time of his termination, as there is no record of that code ever being saved/checked-in to NDR's secure Microsoft Azure repository (NDR's Repository).

       3.      I refer the court to David Delorge's Reply Declaration ("Delorge Reply Decl.") and exhibits annexed thereto describing the technical data obtained from NDR's Microsoft Azure account that refutes Saul's allegations that he only worked on the Azure Virtual Desktop assigned to him and saved/checked-in all source code he wrote including the source code written between September 26, 2021 and January 18, 2022 into NDR's Repository.

       4.      However, I would like to address the various and blatant lies submitted to this Court by Saul including but not limited to the alleged secret "side projects," alleged prior instances of stolen code and threatened/settled litigation against other developers, and alleged lack of adherence to NDR's strict security protocols.

       5.      Contrary to Saul's claim that the codebase for the DealTable VDR Platform was "bare," by the time Saul joined the project, virtually the entire design for the User Experience and User Interface for the DealTable VDR platform was created and there existed a solid codebase that could be built upon in order to implement the design that NDR had already developed.

       7.      Additionally, it is completely false that the codebase created by NDR's prior developer XOps was deleted. *See* Ex. "A" to Delorge Reply Decl. In addition, contrary to Saul's false claims, NDR has not been involved in any litigation with past developers nor accused past developers of stealing its code.

8. The instant action brought against Saul and Saulrealism LLC, is an isolated event that was necessitated by Saul's fragrant breach of his obligations under the Consulting Agreement and Nondisclosure Agreement, and his misconduct in stealing NDR's trade secrets.

9. Saul, throughout his Declaration, tries to mislead the court into thinking that NDR's development project for the DealTable VDR Platform was in disarray and far from being completed. However, this could not be further from the truth.

10. While it is true that two other front-end developers working on the project with Saul were terminated, it is noted that NDR's decision to terminate them was in large part due to feedback provided by Saul that these developers were not performing adequately.

11. As for Saul's complaints about NDR's management requiring additional changes to be made to the DealTable VDR Platform and that the project was "never done," it is noted that Saul was paid for the work he was asked to perform and could have resigned from the project at any time. Copies of invoices and wire transfers for payments made to Saul are annexed hereto as Exhibit "A." Similarly, contrary to Saul's allegation, David Delorge has always been paid in full and in a timely manner.

12. Moreover, at the time Saul was retained for the project, it was made clear to him that NDR's goal was to create a VDR Platform that was superior to those on the market. Therefore, he should not have been surprised that NDR had high standards for the work and wanted to ensure that the final product was as close to perfect as possible.

13. Additionally, the NDR management team was always present and actively involved in moving the project to completion. In fact, daily team meetings were held Monday through Friday at 10:30 am and 6:00 p.m. These meetings were attended by either Jack Concannon and/or

myself, David Delorge and Saul. Not a single week went by that NDR's management team was out of touch with Saul.

14. Also false are Saul's claims that NDR's management (Jack, Thomas and Chris) would give him conflicting directives for the development of the DealTable VDR Platform or that I had asked him to work on a secret "side project."

15. There was no secret "side project" and the only additional project that I discussed with Saul, at the request of Christopher Concannon, was the addition of a virtual road show feature to the DealTable VDR Platform. Christopher Concannon suggested adding this feature in order to make the VDR Platform more marketable to the financial industry engaged in mergers and acquisitions. Christopher had extensive experience in road shows as part of the financial printing business he started running in 1996 under the name Network Financial Printing (NFP). It was NFP's customers, who were starting to conduct more business deals online rather than in-person, that Christopher was hoping to transition over to the DealTable VDR Platform.

16. While Christopher asked me to discuss this additional feature with Saul, no work was performed for this feature, as we first needed to complete the main DealTable VDR Platform.

17. Saul's claim that he worked on this "side project" for two months and saved the work into NDR's Repository has been shown to be false. *See* Ex. "G" to Delorge Reply Decl. There are no files for this alleged code saved in the repository and the last time any work was committed to the Ryan Development branch was June 24, 2021. *See* Ex. "G" to Delorge Reply Decl.

18. It is also completely false that NDR's management ever directed, authorized, or had any knowledge of Saul reviewing its existing codebase on a repository other than NDR's

Repository, as alleged by Saul in ¶ 30 of his Declaration; deleting code or moving code from one server to another server, as alleged by Saul in ¶ 97 of his Declaration.

19. Saul also attempts to characterize NDR's management as maintaining erratic hours and expecting him to respond immediately at all hours of the night. While it is true that I worked long hours on this project, it was never expected for Saul to do the same. Rather it was Saul that informed me that he only slept for periods of three hours at a time with 45 minute naps in between, and worked at all hours.

20. Additionally, it is completely untrue that one person can login as someone else or that there were any instances when either Christopher or I logged in to David Delorge's account and made changes under his name. NDR has specific security protocols in place to prevent this from happening. *See* Delorge Reply Decl.

21. With regard to the final list that was sent to Saul on January 18, 2022, the list was intended to outline all the items that had to be completed in order for the DealTable VDR platform to be ready to launch at the Venture Capital Summit. Apparently, this list upset him and led to the events that transpired later in the day, resulting in Saul's intentional deletion of the DealTable website and applications. *See* Ex. "I" to Delorge Reply Decl. During the 4 to 5 hour window between his firings that day, he managed to write a batch file script to delete the DealTable website (and by deleting the website also deleted the DealTable marketing site, the DealTable application, the DealTable database and database connection, the DealTable website certificates, and the current permissions and user data), and changed the security rules for NDR's account so that he could access it using a computer outside NDR's network. *See* Delorge Reply Decl.

22. As for Saul's stealing of NDR's source code between September 26, 2021 and January 18, 2022, I believe this action was intentional and premeditated because it was not a

situation where Saul deleted the code from NDR's Repository (in which case NDR would have been able to recover it from its repository) but because he failed to use the assigned Virtual Desktop to write the code and never saved it on NDR's Repository to begin with. *See* Exs. "B" and "F" annexed to Delorge Reply Decl.

23. Defendants' conduct in falsely claiming not to be in possession of NDR's source code and refusing to return the source code, which Saul admits constitutes a trade secret owned by NDR, prevents NDR from making the necessary edits and updates needed to complete the DealTable VDR Platform it was on the precipice of finishing and had planned on launching at the Venture Summit Digital Connect.

24. There is no question that Saul's conduct has already resulted in a loss of prospective investors and business opportunities, and will cause irreparable harm to NDR absent an injunction. Moreover, the balance of the equities weighs in NDR's favor, as it is merely seeking to recover property that belongs to it and which Defendants acquired through wrongful and deceptive conduct in violation of their express contractual obligations.

25. Accordingly, for the reasons set forth herein, in David Delorge's Reply Decl. and in NDR's moving papers, it is requested that this Court grant NDR's motion for a preliminary injunction.

26. I declare under the penalty of perjury that the foregoing is true and correct.

Dated: April 18, 2022

_____
THOMAS CONCANNON