

ATTORNEYS AT LAW

NEW YORK
400 MADISON AVE., 10TH FL
NEW YORK, NEW YORK, 10017
TELEPHONE: (212)213-8844
FACSIMILE: (212)213-3318

NEW JERSEY
51 JFK Parkway
Short Hills, New Jersey 07078
Telephone (973) 379-0038
Facsimile (973) 379-0048

WWW.ALLYNFORTUNA.COM

June 14, 2022

**Via ECF**
Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re:  22-cv-02299-LGS
        Network Data Rooms, LLC v. Saulrealism LLC et al
        Independent Expert Report and Request for Review of Additional
        Questions

Dear Judge Schofield,

  Allyn & Fortuna LLP represents the plaintiff, Network Data Rooms, LLC ("Plaintiff"), in connection with the above-referenced action.

  Pursuant to Your Honor's Order dated May 10, 2022, appointing Terry Patterson to serve as an independent expert pursuant to Federal Rule of Evidence 706 and to conduct an independent review of the 18 items delineated in the scope of review submitted in a joint letter filed with the Court on May 6, 2022 (Docket 40), and to prepare a report of his findings, Plaintiff filed on June 7, 2022 a copy of Mr. Patterson's report (Docket 49). In Your Honor's May 10, 2022 Order, the parties were given until June 14, 2022 to submit a letter proposing additional questions to be reviewed by Mr. Patterson.

  Upon review of Mr. Patterson's report, Plaintiff agrees with and adopts the findings in the Report in further support of its application for a preliminary injunction seeking an order "directing Defendants to turn over to Plaintiff the original and all copies of the codebase of the DealTable Virtual Data Room Platform software and the decompiled source code written by Defendants between September 26, 2021 and January 18, 2022, in their possession, custody, or control." The findings made by Mr. Patterson with regard to Scope of Review Items 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, and 18, as summarized below, demonstrate that Defendant Saul, who admits to being the only developer working on the project between September 26, 2021 and January 18, 2022, and who wrote the source code that is depicted in the runtime code reflected on the DealTable VDR website, never committed (a/k/a saved) any of the decompiled source code to NDR's Microsoft Azure DevOPS repository nor deployed any code from NDR's repository to the DealTable website.

Specifically, Mr. Patterson made the following findings:

- Plaintiff had the necessary security measures in place restricting access to NDR's Microsoft Azure Account (Peterson Report, 4-7).
- Ryan Saul must have downloaded the code to a PC to make changes and complete builds for the web site between period 9/26/2021 and 1/18/2022 (Peterson Report, 8).
- Ryan Saul did not commit any code changes made between 9/26/2021 and 1/18/2022 to any branch in NDRs Azure DevOPS repositories (Peterson Report, 8-10).
- The code was not deployed from Ryan Saul's Virtual Machine to the DealTable website between 9/26/2021 and 1/18/2022 (Peterson Report, 10-12).
- Ryan Saul did not was save code to the Azure DevOPS repository between 9/26/2021 and 1/18/2022 (Peterson Report, 12-13).
- The code in NDR's repository is outdated and not reflective of the runtime code on the DealTable web site (Peterson Report, 13-15).
- No code was committed to any branches in NDRs Azure DevOPS repository between 9/26/2021 and 1/18/2022 (Peterson Report, 15).
- No deployments were made to the Azure web server from the Azure DevOPS repository between 9/26/2021 and 1/18/2022 (Peterson Report, 17-19).
- Code changes were not made from the Azure DevOPS repository since the repository does not contain the latest code version (runtime code on the DealTable website) (Peterson Report, 19-20).
- No decompiled source commits made to the Azure DevOPS repository after 9/26/2021 (Peterson Report, 20).
- No code has been deleted from the NDRs Azure DevOPS repositories (Peterson Report, 20-21).
- There are no permissions assigned to accounts in Office 365 or Azure that would allow a resource or user individual account to be breached without knowledge or consent of the key stakeholders (Peterson Report, 26-28).

With regard to items, 8, 13, 14, which Mr. Patterson was unable to report on because the Azure logs did not go far back enough, it is submitted that they are not determinative of the key issues of whether (1) defendant Ryan Saul committed (a/k/a saved) any of the decompiled source code written by him between September 26, 2021 and January 18, 2022 to NDR's Microsoft Azure DevOPS repository; or (2) whether defendant Ryan Saul deployed any source code from NDR's repository to the DealTable website, and Mr. Patterson's inability to make an assessment on those items does not undermine Plaintiff's entitlement to a preliminary injunction based on Mr. Peterson's findings related to Items 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, and 18.

However, Plaintiff does request this Court to order a further review by Mr. Peterson with regard to Item 16: *Review, assess, and report on the time, frequency and participants involved in MS teams daily scrub meetings held between September 26,2021 and January 18, 2022*. Pursuant to Mr. Patterson's report, he assessed that "regular meetings or agile scrums did not occur on this project and all communications were based on the required updates and status of the updates." However, it is unclear from his report whether he reviewed *only* Azure Dev Ops agile Scrum Board for records relating to Microsoft Teams meeting or whether he reviewed the chat and meeting history under Microsoft Teams, their cadence and information related to attendees. It is submitted that Plaintiff's members, its security architect, and defendant Ryan Saul communicated through

Microsoft Teams and held twice daily standup meetings on Microsoft Teams, and a review of such records by Mr. Patterson by having his account added to NDR's Microsoft Teams meetings, would result in a finding under Item 16 that Plaintiff and defendant Ryan Saul communicated regularly and participated in twice daily standup meetings. If this request is granted, Plaintiff agrees to pay for the additional cost associated with the further review.

      Lastly, once the final report by Mr. Patterson is filed with the Court, Plaintiff's counsel requests an opportunity to submit a closing statement in support of Plaintiff's application for a preliminary injunction, either orally or in writing, as directed by the Court.

      Please let us know if you have any questions regarding the foregoing.

> Respectfully submitted,
> /s/
> Paula Lopez

Cc: Renee Wong, Esq. (via ECF)