

**NEW YORK**
**400 MADISON AVE., 10TH FL**
**NEW YORK, NEW YORK, 10017**
**TELEPHONE: (212)213-8844**
**FACSIMILE: (212)213-3318**

**WWW.ALLYNFORTUNA.COM**

July 12, 2022

<u>**Via ECF**</u>
Honorable Lorna G. Schofield
U.S.D.C., S.D.N.Y
500 Pearl Street
New York, New York 10007

      Re:    Network Data Rooms, LLC v. Saulrealism LLC et al (22-cv-02299-LGS)
              Plaintiff's Closing Statement in Support of Preliminary Injunction

Dear Judge Schofield,

      Allyn & Fortuna LLP represents the plaintiff, Network Data Rooms, LLC ("Plaintiff").

      It is submitted that Plaintiff, through its motion papers, the testimonial evidence adduced at the hearing held on April 20, 2022 and April 21, 2022, and through the initial and supplemental reports prepared by Terry Patterson, has demonstrated its likelihood of success on its DTSA claim and its entitlement to a mandatory preliminary injunction directing Defendants to turn over to Plaintiff the original and all copies of the codebase of the DealTable Virtual Data Room Platform software and the decompiled source code written by Defendants between September 26, 2021 and January 18, 2022, in their possession, custody, or control.

      Defendants do not dispute that the source code they wrote as consultants for Plaintiff constitutes a trade secret belonging to Plaintiff. Additionally, there is no dispute that Defendants had a duty to maintain the confidentiality of Plaintiff's trade secrets and to adhere to the security protocols and measures in place when working with the code—which required Defendants to save all code to Plaintiff's Microsoft Azure DevOps Repository ("NDR Repo"). The written and testimonial record developed as part of Plaintiff's application for a preliminary injunction conclusively shows that Defendants failed to commit the source code developed between September 26, 2021 and January 18, 2022 to NDR's Azure DevOps Repository in violation of their obligations under the consulting and nondisclosure agreements and, without authorization, retained possession and control of the code.

      Defendants maintained in their opposition papers to Plaintiff's motion and through the testimony of Mr. Saul that all code had been committed by him to Plaintiff's NDR Repo, contemporaneously with its development between September 26, 2021 and January 18, 2022 and saved on either a branch called "Ryan Development" or "Net Road Show." Plaintiff presented evidence that no code was saved on the "Ryan Development" branch after June 24, 2021 and submits that there never existed a branch called "Net Road Show" or "Net Roadshow." Defendants attempted to attack Plaintiff's credibility, its documentation with regard to non-material issues, and mislead the court into believing that the entire project was in disarray and that Plaintiff somehow lost the source code.

At the conclusion of the preliminary injunction hearing, the sole disputed issue was whether Defendant committed the source code developed between September 26, 2021 and January 18, 2022 to NDR's repository or is currently in possession or control of the code. The court observed that the facts proffered by each side were so diametrically opposed that it raised the question of whether one side was committing perjury and a fraud on the court. (Tr. 117). As discussed below, Mr. Patterson's initial and supplemental reports establish that it is defendant Ryan Saul who has been dishonest with the court in his sworn Declaration and in his testimony at the hearing and in response to questions directly asked by the Court. At the hearing, Mr. Saul adopted as true the statements he made in his Declaration (Tr. 75) but offered conflicting testimony during his direct and cross examination.

## Ryan Saul's Conflicting Statements

Mr. Saul made the following false statements, among many others, in his Declaration and at the hearing:

1. Claims to have followed NDR's implemented security protocols. (Decl. 23-26).
2. Claims that he "never performed any work on the codebase on the DealTable VDR Platform from a personal computer outside the Virtual Network." (Decl. 27); (Tr. 78, 99).
3. Claims all work he "completed for NDR was checked-in on the NDR secure Azure DevOps Source Code Repository." (Decl. 28) (Tr. 78).
4. States that he "continued to deposit code to NDR's repository from [his] initial hiring until about January 16, 2022." (Decl. 29); (Tr. 78).
5. Claims in his affidavit that the branch he created and deposited (saved) code to was called "Ryan Development." (Decl. 34) However, during during direct and cross examination, Mr. Saul testifies that he deposited or saved all code on the branch called Net Roadshow. *cf*. Decl 34 to Tr. 80, 82, 96 & 107.
6. Testified that he was told by Christopher Concannon and Thomas Concannon to go back and forth between the "branches" or "versions".  (Tr. 81)
7. Testified inconsistently that branches were created to keep versions of code changes separate (Tr. 79) but in response to a question by the court about the Net Roadshow branch, Mr. Saul testified that he saved all code to one branch called Net Roadshow (Tr. 82 & 83) *cf*. (Decl. 34).
8. Testified that he only deployed code from "Azure DevOps within the Azure VN..VPN." (Tr. 84).
9. Claims communication from management was "extremely poor during portions of the project development" and at times he "would hear nothing from NDR's management for a week." (Decl. 49-50). On direct, claimed that Thomas refused to communicate with him outside of 3, 4, 5 in the morning. (Tr. 91) "[A]fter June there was no communication." (Tr. 92). On cross, claimed Thomas did not communicate in any fashion, whether Teams, email..") (Tr. 94).
10. Claims David Delorge stopped working becase he was not being paid (Tr. 93).
11. States that "[t]he only time I ever deleted any code, or moved code from one server to another was at Plaintiff's request." (Decl. 97).
12. Tried to blame other developers on the project for stealing the code and when confronted with the fact that those developers were no longer working on the projected in September 2021 tried to blame David Delorge.  (Tr. 99).

Plaintiff, on the other hand, has testified consistently that the decompiled source code written by Defendants between September 26, 2021 and January 18, 2022 was never committed to NDR's Azure DevOps account and that the last code that was committed is not the same as the code that was deployed to the DealTable VDR Platform site and the features currently shown on the site. While Mr.

Saul, in his declaration and in his testimony, claimed that he fulfilled his obligations and committed the code to the NDR Rep contemporaneously with its development and insinuates that any missing code must have been deleted by Plaintiff's members or David Delorge, his claims were proven false by the Mr. Patterson's independent review and report.

**Independent Expert's Findings in Initial and Supplemental Reports**

Mr. Patterson's initial and supplemental report substantiates the facts proffered by Plaintiff in support of its motion for a preliminary injunction in all material respects and demonstrates that it is Mr. Saul that is committing a fraud on the court not Plaintiff. Specifically, the reports make the following findings:

- Ryan Saul must have downloaded the code to a PC to make changes and complete builds for the web site between period 9/26/2021 and 1/18/2022 (Patterson Int. Rpt. 8). In response to Defendants' request for clarification, Mr. Patterson noted that he "did not find any data on the Virtual Machine that indicates Ryan Saul downloaded code at any time to this Virtual Machine **after 1/18/2021**. There were some outdated versions on the Virtual Machine created in the months of December 2020 and January 2021 but no data showing any code downloads were made to this Virtual Machine after the date 1/18/2021." (Patterson Suppl. Rpt. 5-7). It is noted that this confirms that the codebase was downloaded to the virtual machine by Mr. Saul at some point.

- The last date code was saved on Ryan Saul's virtual machine was January 18, 2021. (Patterson Int. Rpt. 10-12). When asked by Defendants' counsel to review other folders within the virtual machine, Mr. Patterson confirmed that he checked "every folder on the Virtual Machine and there was no code on the Virtual Machine with a date later than 1/18/2021", "the dates in all folders and the git folder in the code libraries which keeps a local records of code upload and downloads" and "all folders and sub folders for "ndr_backend", "ndr_frontend", "ndr_frontend_v2" and "test1\ ndr_frontend_v2" and found there was no code in these folders with a date later than 1/18/2021." (Patterson Suppl. Rpt. 7-12).

- Ryan Saul did not commit/save any code changes made between 9/26/2021 and 1/18/2022 to any branch in NDRs Azure DevOPS repositories (Patterson Int. Rpt. 8-10, 12-13). No code was committed to any branches in NDRs Azure DevOPS repository between 9/26/2021 and 1/18/2022 (*Id.* at 15). No decompiled source commits made to the Azure DevOPS repository after 9/26/2021 (Patterson Int. Rpt. 20). In response to Defendants' counsel's question as to whether his assessment is "limited to that no decompiled code was deposited to the "Dealtable Development" branch, and that branch's repository log cannot be altered, Mr. Patterson confirmed that he checked ***all*** branches and there are no deleted branches. (Patterson Suppl. Rpt. 12). He further confirmed that "Branch history cannot be altered." (*Id.*) He concluded that it was his "assessment that there was no code deposited to any of the branches in the NDR-2021 source code repo after 9/26/2021" and that his assessment "is not limited to the Development Branch since [his] review covered all the active NDR Azure DEVOPS projects and all active branches in each project", and "the branch history cannot be altered in the Azure DEVOPS repos." (*Id.* at 12-15).

- With regard to Defendant's counsel's inquiry as to whether Mr. Patterson checked whether an entire branch was deleted with the "exact match in deleted branches" for branches "Net Roadshow' or "Net Road Show", Mr. Patterson confirmed that while "entire branches can be deleted, and deleted branches would show up in the search under deleted branches only if the

exact "branch name" is used in the search", "[t]here are no deleted branches in the Azure Repo for branches named "Net Roadshow" and/or "Net Road Show" based on searches completed in the NDR-2021 repo. (Patterson Suppl. Rpt. 15-17). While Mr. Saul claims to have committed code to the branch called Net Roadshow or Net Road Show, Mr. Patterson's report confirms that no such branch ever existed, as no branch by that name currently exists nor was any branch by that name ever deleted from the NDR Repo. It is further noted by Mr. Patterson that deleted branches "are always recoverable." (*Id.* at 19).

- No code has been deleted from the NDRs Azure DevOPS repositories (Patterson Int. Rpt. 20-21). In response to Defendants' counsel inquiry as to whether there are any logs regarding the commit history of a deleted branch, Mr. Patterson indicated that "deleted branch commit history will not be available unless the deleted branch is restored." (Patterson Suppl. Rpt. 17-18). It should be noted that Mr. Patterson did not find the existence or deletion of a Net Roadshow or Net Road Show branch or that any deletions were made from the Ryan Development Branch—the only branches Mr. Saul claims to have committed code to. Mr. Patterson states that "[s]ince branches cannot be rolled back (overwritten) I have determined that there is no missing history or code reversal in any of the active branches within the NDR-2021 Azure repository." (*Id.* at 19).

- No deployments were made to the Azure web server from the Azure DevOPS repository between 9/26/2021 and 1/18/2022 (Patterson Int. Rpt. 17-19). The code in NDR's repository is outdated and not reflective of the runtime code on the DealTable web site (*Id.* at 13-15). Code changes were not made from the Azure DevOPS repository since the repository does not contain the latest code version (runtime code on the DealTable website) (*Id.* at 19-20). In response to Defendants' counsel's inquiry as to whether "code could have been deployed from NDR's Azure repository on 1/13/2022, and that the runtime code does not reflect the current code within the Azure repository," Mr. Patterson maintained his original position that "[c]ode could not have been deployed from the NDRs Azure repository on 1/13/2022 since all the deployed code and artifacts in the Azure DEVOPS would need to have the same date as the deployed runtime code on the website" and "the latest code on the NDR development web site was not deployed from the NDR-2021 Azure DEVOPS repository since the dates do not match." (Patterson Suppl. Rpt. 20-21).

- The code was not deployed from Ryan Saul's Virtual Machine to the DealTable website between 9/26/2021 and 1/18/2022 (Patterson Int. Rpt. 10-12). In response to Defendants' counsel's inquiry as to whether there are any "logs on the virtual machine's Visual Studio that demonstrate Ryan Saul developed code, committed code to NDR's Azure repository, or published code to the website at any time during his consultant work from December 2020 through his termination in January 2022," Mr. Patterson assessed that "Ryan did not use this Virtual Machine to develop code, commit code to NDRs repository or publish code from this Virtual Machine any time after 1/18/21 unless the folder and code he used was deleted from the Virtual Machine before I started my review." (Patterson Suppl. Rpt. 23). It is submitted that no one acting on behalf of Plaintiff deleted any folders or code from Mr. Saul's Virtual Machine. Moreover, it is noted that code that was saved to a repository branch has not been deleted or rolled back (Patterson Int. Rpt. 20-21; Patterson Suppl. Rpt. 12 & 19). Had Mr. Saul committed code from his virtual machine to NDR's DevOps repository between September 26, 2021 and January 18, 2022, even if that code was deleted from the virtual machine, it would be found in NDR's repository, and no such code commits were found by Mr. Patterson during his review.

- With regard to the regular Teams meeting that Mr. Patterson did not find in his initial review, in his supplement review, he found that there were regular communications and Teams' meetings held between September 26, 2021 and January 18, 2022 as testified to by Plaintiff. (Patterson Suppl. Rpt. 25-33). If fact, he even lists the dates and times of each meeting from which it is evident that Ryan Saul, Thomas Concannon and David Delorge met multiple times a day, for varying lengths. (*Id*. at 28-33). This refutes Mr. Saul's assertions in his Declaration and at the hearing as to the alleged lack of communication by Thomas Concannon and that David Delorge stopped working because he was not being paid.

- Plaintiff had the necessary security measures in place restricting access to NDR's Microsoft Azure Account (Patterson Int. Rpt, 4-7). In response to a request for clarification by Defendants' counsel, Mr. Patterson stated that David Delorge, having the assigned Global Administrator Role would have been able to modify the password and change the multifactor authentication credentials including phone number for the developer account. (Patterson Suppl. Rpt. 5). Plaintiff notes that while the Global Administrator has that capability, Mr. Saul has never claimed that his password and MFA were changed by Mr. Delorge while he was working as developer on the project.

- With regard to audit logs related to deployments (item 8 in initial report), and deletions made on January 18, 2022 (item 13 in initial report), sign-in logs for January 18, 2022 (item 14 in initial report), and deletion and creation of branches (item 1.7 in the supplemental report), which Mr. Patterson was unable to report on because the Azure logs did not go far back enough, it is submitted that they are not determinative of the key issues of whether (1) defendant Ryan Saul committed (a/k/a saved) any of the decompiled source code written by him between September 26, 2021 and January 18, 2022 to the NDR Repo; or (2) whether Mr. Saul deployed the source code reflective of the runtime code on the DealTable website from the NDR Repo.

As shown above, the findings made by Mr. Patterson demonstrate that Mr. Saul, who admits to being the only developer working on the project between September 26, 2021 and January 18, 2022, and who wrote the source code that is depicted in the runtime code reflected on the DealTable VDR website, never committed (a/k/a saved) any of the decompiled source code to the NDR Repo nor deployed the code from the NDR Repo to the DealTable website. Additionally, Mr. Saul does not dispute that this code constitutes a trade secret belonging to Plaintiff. As the person who developed the code and deployed the code, Mr. Saul is the only person with custody and control over the code, as Mr. Patterson has confirmed that the code was never committed to the NDR Repo. Plaintiff has established that the decompiled code is needed to make edits to the runtime code and complete the software for the DealTable VDR Platform, Saul's actions have paralyzed NDR's ability to complete the project and launch the DealTable VDR Platform, which it has been working towards for the last three years, and on January 18, 2022, was only a month or two from completing (Christopher Concannon Decl. 42).

For the reasons stated herein, in Plaintiff's motion papers, and based on the findings contained in Mr. Patterson's initial and supplemental report, Plaintiff requests that this Court grant its application for a mandatory preliminary injunction.

Respectfully submitted,
/s/
Nicholas Fortuna

Cc: Renee Wong, Esq. (via ECF)