**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**NETWORK DATA ROOMS, LLC,**

                                 **Plaintiff,**                  Civil Case No.: 22-cv-02299-LGS

      **-v-**

**SAULREALISM LLC and RYAN SAUL, in**
Her individual and professional capacities,

                                 **Defendants.**
_____

DEFENDANTS' CLOSING STATEMENT IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER UNDER F.R.C.P. 65 (a) and (b)

Renee M. Wong, Esq.
Goldberger & Dubin, P.C.
*Of Counsel*
401 Broadway, Suite 306
New York, New York 10013
(212) 431-9380
Renee@wonglaw.net

# DEFENDANTS' CLOSING STATEMENT

Defendants SaulRealism LLC and Ryan Saul ("Defendants"), by its attorneys Goldberger & Dubin, P.C., respectfully submit this closing statement pursuant to the Court's Order, in opposition to the Plaintiff Network Data Rooms, LLC's (hereinafter "NDR"), Application for a Temporary Restraining Order and Preliminary Injunction, pursuant to F.R.C.P. 65, enjoining and restraining defendants from destroying, disclosing, transferring, or in any way using any of Plaintiff's confidential, proprietary, and trade secret information including but not limited to, the codebase of the DealTable Virtual Data Room Platform software, and the decompiled source code written by Defendants between September 26, 2021 and January 18, 2022. [ECF No. 59].

Specifically, NDR is seeking an Order directing the Defendants to turn over to Plaintiff the original and all copies of the codebase of the DealTable Virtual Data Room Platform software and the decompiled source code written by Defendants between September 26, 2021 and January 18, 2022, in their possession, custody, or control. Defendants do not oppose the relief sought by NDR in paragraphs (a) and (c). Defendants oppose the imposition of a Court Order requiring it to produce materials not in the possession or control of the Defendants.

NDR has failed to show by clear and convincing evidence that Defendants possess the code. The Court held a two-day hearing, where the Court found:

COURT:   And the burden of proof is on the plaintiff. The evidence is strong, but I don't know if it's reliable, and ... my plan I have solidified in my mind... is to deny the aspect of the relief that asks for an order for Mr. Saul to return the code that he has sworn under penalty of perjury he does not have, without prejudice to asking for that at a later point after there is some discovery.

*Transcript of Proceedings April 20-21, 2022*, pg. 123, ¶¶9-15
(hereinafter "*TR*")

The Court reserved decision on Plaintiff's motion pending the review of an independent expert's report. [DKT No. 34]. Terry Patterson was appointed to serve as an independent Court expert pursuant to Fed. R. Evid 706, and produced an expert report[1] on June 7, 2022. [DKT Nos. 42, 49]. Upon request of the parties, Mr. Patterson provided a supplemental expert report.[2] [Dkt No. 58].

Mr. Patterson's reports provide information of the *current status* of the NDR Azure DevOPS repository, Azure subscription, Microsoft Office 365 tenant and the virtual machine operation by Defendant Ryan Saul. It fails to provide the accurate status of any of the Plaintiff's information at the date of Defendants' termination in January 2022. Mr. Patterson relies heavily on the Azure DevOPS tracking and auditing logs, which have a 30 to 90-day retention period. As a result, there is little information regarding the logs for January 2022 and earlier.

The expert reports provide no insight whatsoever as to whether Ryan Saul is in current possession, control, or custody of the source code in question. NDR's own witness David DeLorge testifies that he does not know if Ryan Saul has access to the code, and is only guessing that the decompiled code still exists.

> THE COURT:     How do you know it's not just gone?
> THE WITNESS:   How do I know it's not just gone? I do not.
>
> *T.R.* p. 12.

---

[1] Hereinafter cited as "T.P."
[2] Hereinafter cited as "T.P. Supp."

Further this application for the Defendants to produce the codebase as part of the preliminary injunction is moot. The parties have engaged in the exchange of discovery materials. NDR through fact discovery has demanded the codebase in the possession, control, and custody of the Defendants.  On July 6, 2022, Defendants served NDR with a mirror image of Ryan Saul's hard drive. Although it does not contain a copy of the requested code, Defendants have nothing further to produce that is responsive to the request.

NDR insists that Mr. Saul has access to the code based upon information received from NDR's consultant David DeLorge. Delorge is NDR's Chief Cloud Architect and their Security Architect for all the DealTable application IT infrastructure and security. *TR* p. 2. He is fully cooperating with NDR to escape his own potential culpability for the missing code. As the Chief Cloud and Security Architect, it was his responsibility to ensure that NDR's self-proclaimed proprietary code was secure.

DeLorge was responsible for maintaining security of NDR's code and admits neglecting his duties frequently. He offers conflicting information regarding whether he was maintaining the security of the code at all. He stated that he did not regularly check to see if the code was backed-up and referred to ensuring that the NDR codebase was securely checked-in on the Azure DevOPS system as "babysitting." *TR* p. 16.

DeLorge's credibility was quickly called into question during cross-examination.  He submitted an email to the Court in his Declaration, which was marked as DeLorge Exhibit A. *TR* p. 41. This exhibit was an email purportedly sent on Saturday October 19, 2021 from David DeLorge to Ryan Saul inquiring about the status of the check-ins to NDR's code repository. According to the exhibit, Mr. Saul answered Mr. DeLorge's email on Saturday October 20,

2021. As noted for the record, October 19, 2021 was a Tuesday. As shown from this exhibit, Mr. DeLorge has either fabricated documents to this court or is unable to maintain accurate electronic discovery that can be relied upon. There are serious concerns that any document, screen shot, virtual machine, or cloud-based data-system maintained or controlled by David DeLorge is trustworthy.

Several matters to which DeLorge testified were contradicted by the expert reports. DeLorge states that it would be "impossible" for him to log into Ryan Saul's account. He stated that he did not have the administrative power, even as "chief architect" to log in Ryan Saul, because Mr. Saul's phone was required for multifactor authentication. *TR* pp. 29-30. He further states he could not change Mr. Saul's multifactor identification credentials, and that Chris Concannon is the "only person who can do that." *TR* p. 50. This was very quickly debunked by Mr. Patterson, who confirms that "David Delorge is assigned as a Global Administrator Role and would have been able to modify the password and change the multifactor authentication credentials including phone number for the developer account." *T.P. Supp.* p. 5

The virtual machine ("VM") provided to the expert Patterson by DeLorge is completely unreliable.  Prior to submission of the VM to the expert, DeLorge had restored the VM to a different date, the date being at least six months prior to the hearing. DeLorge testified at the hearing there was "**no code saved to this machine at any given time**." *TR* p 19 (emphasis added). DeLorge states that he had the ability, and he did "roll the machine back... and restore the machine back to any certain date we want to." *Id.* ¶¶13-17.

Contrary to DeLorge's testimony and exhibits, Mr. Paterson reports that there was code found on the VM dated January 18, 2021. *T.P. Supp.* P 23 ("It is my assessment that Ryan did not

use this Virtual Machine to develop code, commit code to NDRs repository or publish code from this Virtual Machine any time after 1/18/21 unless the folder and code he used was deleted from the Virtual Machine before I started my review."). This date happens to be exactly one-year prior to Ryan Saul's termination. The tampering of the virtual machine's dates and the contradictory statements from DeLorge, calls in question the reliability of all the systems controlled by NDR's Chief Security Architect.

Based upon the Azure DevOPS system provided, Patterson finds that there was no code checked in to NDR's repository in its active branches after September 26, 2021, as the current branches of code do not reflect code that was checked in after that date. Patterson also acknowledges, that entire branches of code can be deleted. *T.P. Supp*. p. 17 ("I have assessed that there could potentially be deleted branches that I was not able to find without using an exact name match and that any deleted branch commit history will not be available unless the deleted branch is restored."). Any statement made by NDR that code *cannot be deleted* is completely inaccurate pursuant to the expert.

There should not be an Order directing Defendants to produce Plaintiff's codebase as the Defendants do not possess the code. NDR has failed to make a showing that Ryan Saul has current access to this code. Moreover, Mr. Saul has produced a mirror image of his hard-drive to NDR without objecting or going through discovery-based motion practice despite the burdensome request.

For all the foregoing reasons, the Court should deny the Plaintiff's application in its entirety, together with such other and further relief as the Court deems just, equitable, and proper.

Dated:	New York, New York
	July 12, 2022

	S/_____
	Renee M. Wong, Esq.
	Goldberger & Dubin, P.C.
	*Of Counsel*
	401 Broadway, Suite 306
	New York, New York 10013
	(212) 431-9380
	Renee@wonglaw.net