UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————X
NETWORK DATA ROOMS LLC,                       :        **Index No. 22-CV-2299-LGS**
                                              :
                        Plaintiff,            :
                                              :
       -against-                              :
                                              :
SAULREALISM LLC and RYAN SAUL, in her         :
individual and professional capacities,       :
                                              :
                        Defendants.           :
——————————————————————X

---

### MEMORANDUM OF LAW IN OPPOSITION TO THE IMPOSITION OF SANCTIONS AGAINST PLAINTIFF OR PLAINTIFF'S COUNSEL AND REFERRAL OF THIS MATTER TO THE U.S. ATTORNEY'S OFFICE

---

ALLYN & FORTUNA LLP
Nicholas Fortuna, Esq.
Paula Lopez, Esq.
Attorneys for Plaintiff Network Data Rooms LLC
400 Madison Avenue, Suite 10D
New York, New York 10017
(212) 213 – 8844

<u>TABLE OF CONTENTS</u>

Preliminary Statement …………………………………………………………… 1

Relevant Facts…………………………………………………………………….. 1

Argument …………………………………………………………………... 4

    A.  Plaintiff has not Committed a Fraud on the Court…..………………………..…. 5

    B.  The Imposition of Sanctions against Plaintiff for Mr.
        Delorge's Conduct is Improper……………………………………………………7

         1.     Submission of Email 1 was not the Product
                 of Intentional Bad Faith…………………………………………… 7

         2.     Submission of Email 1 Has Not Prejudiced Defendants………….. 8

         3.     Submission of Email 1 was an Isolated Incident…………………. 9

         4.     Plaintiff Has Attempted to Correct Mr. Delorge's Misconduct…… 9

         5.     Further Misconduct Will Not Occur in the Future………………… 10

    C.  Severe Sanction of Dismissal of the Action is Not Warranted…...…………...... 11

    D.  Referral To The U.S. Attorney's Office Is Not Warranted…………………….. 13

Conclusion ……………………………………………………………….... 15

TABLE OF AUTHORITIES

Cases                                                                                            Page

*Amerisource Corp. v. Rx USA Intern., Inc.*,
   02-CV-2514 (JMA), 2010 WL 2730748, at *7 (E.D.N.Y July 6, 2010)…………….. 11

*Antidote Intern. Films, Inc. v Bloomsbury Pub.*,
   06-CV-6114 (JSR), 2007 WL 1834839, at *2 (S.D.N.Y June 26, 2007)…………….... 15

*Commn. v Payton*,
   176 F. Supp. 3d 346 (S.D.N.Y 2016)…………………………………………..…… 15

*Chambers v. Nasco*,
   501 U.S. 32, 44 (1991)……………………………………………..……………… 5

*Chen v. Wai? Café, Inc.*,
   10-CV-7254 (JCF), 2016 WL 722185, at * 6 (S.D.N.Y. Feb. 19, 2016)……………… 9

*DAG Jewish Directories, Inc. v. Y & R Media, LLC*,
   09-CIV-7802(RJH), 2010 WL 3219292, at *5 (S.D.N.Y Aug. 12, 2010)……………. 9

*DLC Mgmt. Corp. v. Town of Hyde Park*,
   163 F.3d 124 (2d Cir. 1998)……………………………………………….…….. 5

*Duka v. Alliance Tri-State Construction Inc.*,
   20-CV-6648 (ER), 2021 WL 4461019, at *3 (S.D.N.Y. Sept. 29, 2021)……………. 11

*Great Coastal Exp., Inc. v. Int'l Broth. of Teamsters*,
   675 F.2d 1349 (4th Cir. 1982)…………………………………………….............. 6

*Hargrove v. Riley*,
   CV-04-4587 (DGT), 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007)……………. 10

*Hazel-Atlas Glass Co. v, Hartford-Empire Co.*,
   322 U.S. 238 (1988)…………………………………………………………….. 6

*Jung v. Neschis*,
   01-CV-6993(RMB)(THK), 2009 WL 762835, at *14 (S.D.N.Y Mar. 23, 2009)……… 11

*McMunn v. Memorial Sloan Kettering Cancer Center*,
   191 F.Supp.2d 440 (S.D.N.Y. 2002)…………………………………………… 11

*New York Credit & Fin. Mgt. Group v Parson Ctr. Pharm., Inc.*,
   432 Fed. Appx. 25 (2d Cir. 2011)…………………………………….......... 11

*Passlogix, Inc. v. 2FA Tech., LLC,*
    708 F. Supp. 2d 378 (S.D.N.Y. 2010)…………………………………………… 4, 5

*Petite v United States,*
    262 F.2d 788 (4th Cir. 1959)……………………………………………..... 14

*Rybner v. Cannon Design, Inc.,*
    No. 95-CV-0279 (SS), 1996 WL 470668, at *3 (S.D.N.Y. Aug. 20, 2006).....……… 5, 6

*Scholastic, Inc. v. Stouffer,*
    221 F. Supp. 2d 425 (S.D.N.Y. 2002)…………………………………………... 8, 10

*Shangold v Walt Disney Co.,*
    03-CV-9522 (WHP), 2006 WL 71672, at *5 (S.D.N.Y. Jan. 12, 2006)……………...11, 12

*State v. United States Department of Commerce,*
    461 F.Supp. 3d 80 (S.D.N.Y. 2020) …………………………………..…….…… 5

*United States v Cornielle,*
    171 F.3d 748  (2d Cir 1999)……………………………………………… 13

*United States v Dudley,*
    581 F.2d 1193 (5th Cir. 1978)………………………………………......... 14

*United States v Dunnigan,*
    507 US 87 (1993)……………………………………………………..…… 13

*United States v Icardi,*
140 F. Supp 383 (D.D.C. 1956)………………………………………….......... 14

*U.S. v. Livoti,*
    22 F.Supp.2d 235 (S.D.N.Y 1998)……………………………………………….. 14

*United States v Maxwell,*
    534 F Supp 3d 299 (S.D.N.Y. 2021)………………………………….......... 14

<u>Statutes</u>                                                                                          <u>Page</u>

18 U.S.C. § 1621 ………………………………….…………….. *passim*

18 U.S.C. § 1622 …………………………………………………… *passim*

18 U.S.C. § 1623 …………………………………………………… *passim*

18 U.S.C. § 1836………………………………………….…………………… 1

## **PRELIMINARY STATEMENT**

Plaintiff Network Data Rooms, LLC ("Plaintiff") has been directed to show cause as to why the Court should not impose sanctions up to and including dismissal of the action and referral to the U.S. Attorney's Office for the Southern District of New York for perjury and false statements. It is alleged by Defendants' counsel in a letter dated August 5, 2022 that the email attached as Exhibit "A" to Mr. Delorge's declaration ("Email 1") was altered prior to submission based on the production during discovery of an email between Mr. Delorge and Mr. Saul ("Email 2"), which Defendants allege to be the original unaltered email. *(See* Dkt. No.76).

It will be shown herein that neither Plaintiff, nor its counsel, altered any document, or knowingly submitted to the Court an altered document. The potential act of perjury or false statement before this Court was not committed by Plaintiff but by non-party witness, Mr. David Delorge, who submitted a declaration and testimony in support of Plaintiff's motion for a preliminary injunction. Moreover, neither Plaintiff nor its counsel was aware or involved in any alleged changes made by Mr. Delorge to Email 1 or had any knowledge or suspicion that Email 1 was not genuine at the time it was submitted as an exhibit to Mr. Delorge's declaration. Additionally, neither Plaintiff nor counsel had seen Email 2 at the time of attaching Email 1 as an exhibit and therefore had no reason to believe that Email 1 was an altered version of Email 2. As such, it would be a misuse of this Court's inherent power in investigating and punishing potential fraud on the Court to impose any degree of sanctions against Plaintiff for the alleged misconduct of a non-party witness, or to make a referral to the U.S. Attorney's Office with regard to Plaintiff or its counsel.

## **RELEVANT FACTS**

Plaintiff filed this action against defendants Saulrealism LLC and Ryan Saul ("Defendants") for, inter alia, misappropriation of trade secrets under the 2016 Defense of Trade Secrets Act, 18 U.S.C. § 1836, et seq. and New York common law, as well as for conversion, and breach of contract.

Plaintiff seeks to protect and recover its trade secrets and confidential and proprietary information consisting of the original codebase for a virtual data room platform and the decompiled code written by defendant Saul between September 26, 2021 and January 18, 2022, which Defendants have misappropriated in violation of the terms of binding and enforceable agreements. *(See* Complaint, Dkt #1). Immediately after commencing this action, Plaintiff filed a motion for a preliminary injunction by Order to Show Cause, seeking to prevent Defendants from disclosing or destroying the source code and the return of it to Plaintiff so it can complete the development project. In support of its motion, Plaintiff filed several documents including the Declaration of security consultant, David Delorge dated March 22, 2022, containing Email 1 as an exhibit. Email 1 was provided to Plaintiff's counsel by Mr. Delorge as a PDF attachment to an email he sent to counsel providing information about the code development work performed by defendant Saul and the technical aspects of the project and source code.

A hearing on Plaintiff's preliminary injunction motion was held on April 20, 2022 and April 21, 2022. On cross-examination of David Delorge, Defendants' counsel raised certain irregularities in Email 1, namely the inconsistencies regarding the date the email was sent and received.  *See* Transcript from 4/20/21 at p. 40-42 (Dkt No. 35). This was the first time Plaintiff's counsel became aware of the inconsistencies in Email 1, which had been attached to Mr. Delorge's declaration in the exact form that it was provided by Mr. Delorge and not altered in any way by Plaintiff or Plaintiff's counsel. (Lopez Cert. at ¶¶ 3, 4, 8, 13; Fortuna Cert. at ¶3, 9, 10, Concannon Decl. at ¶3.) The email provided by Mr. Delorge consisted of an alleged exchange between Mr. Delorge and Ryan Saul between October 19, 2021 and October 20, 2021, in which Mr. Delorge purportedly asked Mr. Saul where he was committing code to and Mr. Saul responded that it was being saved in a "new branch, under Project Ryan Development." Email 1, on its face, was consistent with information provided by Mr. Delorge to Plaintiff's counsel that Ryan Saul had told him that he was saving code to a new

branch called "Ryan Development." (Lopez Cert at ¶10). However, after Defendants' termination it was discovered that the code had not been saved on that branch or any branch of Plaintiff's repository. At the time of receiving Email 1, Plaintiff's counsel had no reason to suspect that Mr. Delorge would provide an altered document and read Email 1 to confirm its substance but did not notice the irregularity in the dates. (Lopez Cert. at ¶ 12; Fortuna Cert. at ¶8.)

At the conclusion of the hearing, it was suggested by Plaintiff's counsel that the Court appoint an independent expert to review Plaintiff's Azure account and repository and prepare an independent report for the Court to consider prior to ruling on Plaintiff's motion for a preliminary injunction. The Court directed counsel to submit a joint letter the following day. A joint letter was submitted on April 22, 2022 in which Defendants' counsel objected to the appointment of an independent expert. (*See* Dkt. No.33) Nevertheless, Terry Patterson was appointed on May 10, 2022. (*See* Dkt. No. 42.)  As part of his independent review, Mr. Patterson prepared three reports, which were filed with the Court on June 7, 2022 (Int. Rpt.), June 30, 2022 (Suppl. Rpt.), and July 27, 2022 (2d Suppl. Rpt.) (*See* Dkt. No. 49, 58, 67). Mr. Patterson's reports made numerous findings supporting Plaintiff's claims and the material factual allegations contained in Plaintiff's complaint and in the declarations submitted in support of Plaintiff's motion for a preliminary injunction and refuting the material statements made by Mr. Saul in his declaration and hearing testimony.

As part of the discovery in this case, Plaintiff sought all emails exchanged between David Delorge and Ryan Saul; Plaintiff's counsel then produced them to Defendants on July 14, 2022. The discovery produced by Plaintiff included Email 2, which Defendants' counsel alleges to be the unaltered version of Email 1[1]. The first time Plaintiff's counsel saw Email 2 was as part of the

---

[1] Plaintiff's counsel recognizes the similarities between Email 1 and Email 2 and has been unable to obtain information from Mr. Delorge regarding the authenticity of Email 1 and Email 2. Plaintiff's counsel does not represent Mr. Delorge. Further, given the conflict that exists between Mr. Delorge and Plaintiff and the potential harm that Mr. Delorge's conduct may have on Plaintiff and its claims against Defendants, Plaintiff's counsel has advised Mr. Delorge to obtain independent counsel to represent him in connection with the potential claims arising from his alleged conduct.

discovery in this case. As a result, neither Plaintiff nor counsel was aware of the existence of Email 2 or the irregularities in Email 1 at the time of attaching Email 1 as an exhibit to Mr. Delorge's declaration.  Had Plaintiff's counsel noticed the discrepancy upon receipt of the Email 1, inquiries would have been made into the irregularities and Plaintiff would never have knowingly submitted a potentially altered document into court in support of its motion for a preliminary injunction.

## ARGUMENT

"A fraud on the court occurs where it is established by *clear and convincing evidence* that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by . . . unfairly hampering the presentation of the opposing party's claim or defense." *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010) (emphasis added). Neither Plaintiff nor its counsel engaged in any conspiracy or scheme with non-party David Delorge to defraud the Court or Defendants, nor were they acting in bad faith in submitting Email 1 as an exhibit to Mr. Delorge's declaration. Plaintiff and its counsel did not know that the document may have been altered in any way. It would be unjust to impute Mr. Delorge's rogue acts on Plaintiff when the evidence is clear that any act committed with respect to Email 1 was committed by Mr. Delorge, on behalf of himself, without the knowledge or inducement of Plaintiff or its counsel.  Moreover, none of the factors considered by courts in apportioning sanctions warrant the imposition of sanctions against Plaintiff or its counsel as a result of a single mistake in not noticing the discrepancies in Email 1 prior to using it as an exhibit in a court filing. *See Id.* at 394. Should the Court determine that sanctionable conduct occurred, it is Mr. Delorge who should be sanctioned as only he is responsible for the alteration of Email 1, and in no event is dismissal of Plaintiff's action warranted. Lastly, it will be shown that because neither Plaintiff nor its counsel has knowingly made a false statement, used a false document, or procured another to commit those acts, a referral of Plaintiff or its counsel to the U.S. Attorney's Office is not warranted.

A.      **Plaintiff has not Committed a Fraud on the Court**

This Court has the inherent authority to impose sanctions on a party for engaging in conduct that abuses the judicial process. *See Chambers v. Nasco*, 501 U.S. 32, 44 (1991) ("a court has the power to conduct an independent investigation in order to determine whether it has been a victim of fraud (internal citation omitted)." A finding of fraud on the court must be based on "clear and convincing evidence." *See Passlogix Inc.,* 708 F.Supp.2d at 393 (S.D.N.Y. 2010).

Imposing sanctions pursuant to the court's inherent power requires "'a finding of bad faith.'" *See State v. United States Department of Commerce*, 461 F.Supp. 3d 80, 89 (S.D.N.Y. 2020) *quoting DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124. 136 (2d Cir. 1998). The court in *State* had to consider whether allegations that defense witnesses provided allegedly false testimony in their depositions and concealed evidence in discovery constituted fraud on the court. In finding that there was insufficient evidence of fraud on the court by the non-party witnesses, the court stated that its

> inherent sanctioning power is even more limited with respect to the alleged misconduct of a non-party witness. In particular, mere '[u]ntruthful testimony,' 'perjury,' and 'non-disclosure' by a non-party witness is insufficient to warrant sanctions under the court's inherent powers unless it is part of a larger scheme amounting to fraud on the court.

*See Id. citing Rybner v. Cannon Design, Inc.,* No. 95-CV-0279 (SS), 1996 WL 470668, at *3 (S.D.N.Y. Aug. 20, 2006) (Sotomayor, J.) In addressing whether there was a sufficient basis for sanctioning the defendants for the alleged perjured testimony of a non-party witness, the court in *State* determined that "Newman's testimony, however troubling, could merit sanctions pursuant to the court's inherent power only if it were a broader scheme orchestrated by Defendants or their attorneys to intentionally mislead the Court. But the record as it stands does not contain 'clear and convincing' evidence of such a scheme." *Id*.

In discussing what constitutes fraud on the court, Justice Sotomayor stated in *Rybner* that

> 'Only when a fraud seriously affects the integrity of the normal process of adjudication, does the conduct amount to a fraud upon the court,' as 'where it can be

demonstrated clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing parties claim or defense.'

No. 95-CV-0279 (SS), 1996 WL 470668, at *3 (S.D.N.Y. Aug. 20, 2996) (Sotomayor, J.) The court found that "defendants have proven by clear and convincing evidence that Rybner acted intentionally, wilfully, and in bad faith in perjuring himself at his deposition and that Rybner did so in an attempt to hinder the fair and full adjudication of the case." *Id*. at *4. Nevertheless, the court declined to impose the severe sanction of dismissal, noting that "the falsehoods at issue are not central to the claim in dispute and Rybner's correction of his misstatements was not unduly delayed." *Id.*

Courts have also recognized that "[f]raud on the court involves 'far more than an injury to a single litigant' because it threatens the very integrity of the judiciary and the proper administration of justice." *See Gleason v. Jandruko*, 860 F.2d 556 (2d Cir. 1988) *discussing* the Supreme Court's decision in *Hazel-Atlas Glass Co. v, Hartford-Empire Co.,* 322 U.S.238, 246 (1988). Situations involving the alleged perjury or false evidence affecting a single litigant have been held not to be 'fraud on the court' but, instead "evils that can and should be exposed at trial, and the legal system encourages and expects litigants to root them out as early as possible." *See Great Coastal Exp., Inc. v. Int'l Broth. of Teamsters*, 675 F.2d 1349, 1357 (4th Cir. 1982).

Applying the aforementioned principles to this case, at the time Email 1 was submitted as an exhibit to Mr. Delorge's declaration, Plaintiff and Plaintiff's counsel believed that it was a genuine document and had not noticed the discrepancies in the date. The email was provided to Plaintiff and Plaintiff's counsel by Mr. Delorge and it was attached to his declaration as a PDF without any alterations. Plaintiff is not in a position to submit justifications or explanations on behalf of Mr. Delorge for the irregularities in the emails, nor does it seek to justify or explain Mr. Delorge's conduct. However, Plaintiff can show that neither it nor its counsel made any changes to Email 1

6

prior to submitting it to the Court. Furthermore, Plaintiff produced all emails provided by Mr. Delorge to Defendants as part of the discovery and did not seek to hinder or prevent Defendants from receiving Email 2. Therefore, there is no evidence, let alone clear and convincing evidence, that Plaintiff or its counsel has engaged in a scheme with Mr. Delorge to "intentionally, wilfully, and in bad faith" interfere with this Court's ability to impartially adjudicate this case or to prevent Defendants from developing and presenting a defense to Plaintiff's claims.  Therefore, it is submitted that Plaintiff has not committed a fraud on the court warranting the exercise of this Court's inherent authority to impose sanctions.

**B.      The Imposition of Sanctions against Plaintiff for Mr. Delorge's Conduct is Improper**

Should this Court determine that Mr. Delorge's alleged conduct constitutes fraud on the court, it is submitted that Mr. Delorge, not Plaintiff, should be sanctioned by the Court. Parenthetically, by the nature of the alterations to Email 1, it seems that Mr. Delorge sought to show Plaintiff he was doing his job. His audience was not the Court or Defendants but, likely, Plaintiff.   However, if this Court finds that sanctioning Plaintiff in some form is warranted, all five factors to be considered in determining the appropriate sanctions—(1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the injured party; (3) whether there is a pattern of misbehavior rather than an isolated instance; (4) whether and when the misconduct was corrected; and (5) whether further misconduct is likely to occur in the future—militate against severe sanctions. *See Passlogix Inc.* 708 at 394.

1.      **Submission of Email 1 was not the Product of Intentional Bad Faith.** Neither Plaintiff nor counsel acted intentionally or in bad faith in submitting Email 1 as an exhibit to Mr. Delorge's declaration. As discussed above, neither Plaintiff nor Plaintiff's counsel knew the email was altered when it was filed with the Court and only became aware of the discrepancies when raised by Defendants' counsel during Mr. Delorge's cross-examination. Additionally, Plaintiff and its counsel

had not seen Email 2 at the time Email 1 was submitted, as Email 2 was only later obtained from Mr. Delorge as part of discovery, and which Plaintiff produced to Defendants. Moreover, after discrepancies in Email 1 were brought to light at the preliminary injunction hearing, Plaintiff has not sought to rely on Email 1 in support of its claims or its motion for a preliminary injunction motion. *See* Pl. Closing Statement (Dkt. No. 61).  Therefore, it cannot be shown that Plaintiff or counsel has acted with intentional bad faith towards the Court or Defendants. *Compare Scholastic, Inc. v. Stouffer*, 221 F.Supp.2d 425, 445 (S.D.N.Y. 2002) (finding that Plaintiff engaged in bad faith conduct by asserting "claims and defenses without any reasonable basis in fact or law and has attempted to support such claims and defenses with items of evidence that have been created or altered for purposes of this litigation.")

   2. **<u>Submission of Email 1 Has Not Prejudiced Defendants</u>**. Plaintiff acknowledges the seriousness of Email 1 and that it has created a time-consuming distraction from the central issues in this case. However, the discrepancies in Email 1 came to light at the early stages of this action and Defendants have not been impeded in developing their defense or in discovery, resulting in no prejudice to Defendants. Defendants' counsel raised the discrepancies in Email 1 during Mr. Delorge's cross-examination, calling his credibility into question. *See* Transcript at pp. 40-42 (Dkt. No. 35). Furthermore, to the extent that this action is in its early stages, discovery has just recently begun and depositions still need to conducted; it cannot be said that Email 1 has infected these proceedings or that Defendants have in any way been hindered in their defense to the action. Instead, Plaintiff has been prejudiced by Mr. Delorge's conduct, which has cast a negative light on Plaintiff's meritorious claims against Defendants and jeopardized Plaintiff's ability to pursue its claims.

   Additionally, Email 1 made it appear as if Mr. Saul told Mr. Delorge on October 20, 2021 that he was saving the source code to a branch called "Ryan Development." By contrast, Email 2, dated January 16, 2021, appears as if Mr. Saul told Mr. Delorge the source code was being saved on a "new

branch under project backend_v2. Branch name is GraphAPILogin.[2]" There is little evidentiary significance to Email 1, other than to support Mr. Delorge's claim that he had been checking whether the source code was being committed by Mr. Saul. Email 1 is not material or critical to Plaintiff's ability to establish that Mr. Saul was obligated to save all code on Plaintiff's repository and has knowingly lied about doing so.  *See* Int. Rpt. at pgs 8-10, 12-13, 15, 20.

        **3.**      **The Submission of Email 1 was an Isolated Incident.** The submission of Email 1, as provided by Mr. Delorge, was an unintentional, isolated incident and Plaintiff has not engaged in a "'pattern, scheme, or campaign' of misconduct." *See, Chen v. Wai? Café, Inc.*, 10-CV-7254 (JCF), 2016 WL 722185, at * 6 (S.D.N.Y. Feb. 19, 2016) (Francis, MJ) ("single instance of misrepresentation, even if intentional, would not constitute fraud on the court."); *compare DAG Jewish Directories, Inc. v. Y & R Media, LLC*, 09-CIV-7802(RJH), 2010 WL 3219292, at *5 (S.D.N.Y Aug. 12, 2010) ("plaintiff has engaged in a pattern of misbehavior, submitting this forgery after being warned that the Court considered Hayoun's purported employment agreement a possible 'cut-and-paste' job, and after being chastised for intentionally misquoting a crucial portion of that contract.") While Plaintiff acknowledges the seriousness of this matter, and the dubiousness of Mr. Delorge's credibility given the similarities between Email 1 and Email 2, Plaintiff did not have any involvement in making any alterations to the email or have any intention of submitting a potentially altered document into evidence in support of its meritorious claims. Moreover, as discussed, *infra*, there is no question that Plaintiff's material allegations in Plaintiff's complaint and its motion for a preliminary injunction are supported by credible admissible evidence.

        4.      **Plaintiff Has Attempted to Correct Mr. Delorge's Misconduct**. Plaintiff has taken every step to ensure that the truth comes out in this litigation. Plaintiff produced in discovery all emails

---

[2] While Mr. Saul may not have told Mr. Delorge in October 2021 that the code was being saved on the Ryan Development branch, Mr. Saul did state in his own sworn declaration to the Court that "[o]n or about October 2021, I created a new "branch" called "Ryan Development. … New code was deposited into the branch" (Saul Decl. ¶¶ 34, 36).

between David Delorge and Mr. Saul, including Email 2. Furthermore, neither Plaintiff nor its counsel has attempted to excuse Mr. Delorge's alleged conduct in possibly altering Email 1, as they would never condone such activities, or knowingly rely on an altered document[3]. *Compare Scholastic, Inc. v. Stouffer, supra* at 444 (awarding plaintiffs legal fees and costs after finding that "Stouffer has engaged in a pattern of intentional bad faith conduct and failed to correct her fraudulent submissions, even when confronted with evidence undermining the validity of those submissions."); *Hargrove v. Riley*, CV-04-4587 (DGT), 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007) ("A severe sanction is warranted as Hargrove's forgeries were intentional, he never corrected them once their authenticity was challenged and he continues to insist on their veracity.") Additionally, in light of issues raised during the preliminary injunction hearing, it was Plaintiff who asked the Court to appoint an independent expert to review Plaintiff's Azure Repository and determine whether the source code written by Mr. Saul between September 26, 2021 and January 18, 2022 had been saved to Plaintiff's repository, the central issue underlying Plaintiff's claims. Plaintiff also agreed to pay all costs associated with the independent review, while Defendants objected to the appointment of the independent expert.

5.     **Further Misconduct Will Not Occur in the Future.** As stated above, the submission of Email 1 was an unintentional, isolated incident that will not occur in the future, and was the result of a hasty review of the email and nothing more. *See Duka v. Alliance Tri-State Construction Inc.*, 20-CV-6648 (ER), 2021 WL 4461019, at *3 (S.D.N.Y. Sept. 29, 2021) (recognizing that the terminating sanction of dismissal must be supported by something other than an isolated instance of misconduct

---

[3] The statement in Plaintiff's counsel's letter dated August 9, 2022 that "[w]ile not being able to confirm this, it is believed now that the email was an ill-conceived attempt by Plaintiff's contractor to make it seem like he was verifying whether Defendant Saul was properly committing his code to NDR's repository as was required, in order to save face in front of Plaintiff once it was discovered that defendant Saul had stolen the source code developed between September 26, 2021 and January 18, 2022" was in no way intended to justify, excuse, or minimize Mr. Delorge's conduct. It was to point out that it appears that the statement was not created for the Court's consumption, but likely for the Plaintiff's.

and requires clear and convincing evidence of "a pattern, scheme, or prolonged campaign of misconduct").

For the reasons discussed above, it would be improper to sanction Plaintiff because a consultant serving as a non-party witness may have altered a document. This would be especially unjust when the document at issue is not relevant to Plaintiff's claims. *See Amerisource Corp. v. Rx USA Intern., Inc.*, 02-CV-2514 (JMA), 2010 WL 2730748, at *7 (E.D.N.Y July 6, 2010), *aff'd sub nom. New York Credit & Fin. Mgt. Group v Parson Ctr. Pharm., Inc.*, 432 Fed. Appx. 25 (2d Cir. 2011) (declining to award plaintiff the entirety of its attorney's fees as sanctions for the defendant's conduct in fabricating evidence and giving false and misleading testimony in support of its claims, finding that the plaintiff did not show how the altered emails prolonged the litigation, or caused it to "change its discovery, settlement, or litigation strategy, or incur expenses it would have otherwise foregone").

**C. Severe Sanction of Dismissal of the Action is Not Warranted**

A terminating sanction dismissing Plaintiff's action would be extremely severe and should only be reserved for the most egregious cases, when lesser sanctions would not serve the interests of justice. *See Jung v. Neschis*, 01-CV-6993(RMB)(THK), 2009 WL 762835, at *14 (S.D.N.Y Mar. 23, 2009) (in deciding not to dismiss plaintiff's pleading as a sanction for introducing fabricated evidence, the court noted that the evidence was not essential to their claims or their ability to state a claim against defendants as compared to other cases where dismissal was appropriate); *but see*, *McMunn v. Memorial Sloan Kettering Cancer Center*, 191 F.Supp.2d 440, 462 (S.D.N.Y. 2002) (finding that the plaintiff deserved the harsh sanction of dismissal with prejudice because where her dishonesty "pervade[d] every aspect of this case. [Plaintiff] lied and convinced others […] to lie. … has altered, destroyed, and otherwise spoiled evidence. She has concealed the whereabouts of a material witness. There can be no doubt that she irrevocably tainted these proceedings."); *see also, Shangold v Walt*

11

*Disney Co.*, 03-CV-9522 (WHP), 2006 WL 71672, at *5 (S.D.N.Y. Jan. 12, 2006), *aff'd*, 275 Fed.

Appx 72 (2d Cir. 2008) (finding that plaintiffs fabricated a timeline and plot summary central to their

claims and that their "egregious conduct was prolonged and calculated to advance their claims" and

because they "have tainted evidence at the heart of their dispute with Defendants and then sought to

conceal it, they have forfeited their right to litigate this case and no sanction short of dismissal will

suffice to deter future misconduct.")

In contrast to the cases where severe sanctions including dismissal have been imposed,

Plaintiff's submission of Email 1 without any knowledge that the email had been altered or any

involvement in the potential altering of the email, amounts to nothing more than an unintentional

mistake by Plaintiff and Plaintiff's counsel in not catching the discrepancies in the dates, and was not

submitted intentionally or in bad faith. Moreover, unlike the cases where the alleged altered evidence

was material to the plaintiffs' claims, Plaintiff herein has meritorious claims against Defendants that

are wholly supported by credible admissible evidence entirely unrelated to Email 1. Firstly, the Non-

Disclosure and Consulting Agreements, which Defendants admit are binding on them (Tr. Pgs, 76-

77)(Dkt. No. 37), establish that the source code Defendants were hired to write was the confidential

property of Plaintiff, which Defendants were required to safeguard in accordance with company

policy and return to Plaintiff upon termination of the consulting relationship. *See* (Dkt. No. 9

[attachments 2 & 3]).  In addition, Defendant Saul admits that he was the only code developer working

on the project between September 26, 2021 and January 18, 2022 (Tr. P. 99) (Dkt. No. 37). The

findings made by independent expert Terry Patterson establish that Mr. Saul did not save the source

code he wrote between September 26, 2021 and January 18, 2022 to Plaintiff's repository. Specially,

Mr. Patterson found:

- That the last date code was saved on Ryan Saul's virtual machine was January 18, 2021. (Int. Rpt. 10-12) (Suppl. Rpt. 7-12).
- That he checked ***all*** branches and there are no deleted branches. (Suppl. Rpt. 12)

- That "Branch history cannot be altered." (Suppl. Rpt. 12.)
- That Ryan Saul did not commit/save any code changes made between 9/26/2021 and 1/18/2022 to any branch in NDRs Azure DevOPS repositories (Int. Rpt. 8-10, 12-13, 15, 20).
- That an exact name search for deleted branches was made and "[t]here are no deleted branches in the Azure Repo for branches named "Net Roadshow" and/or "Net Road Show" based on searches completed in the NDR-2021 repo. (Suppl. Rpt. 15-17).
- "Since branches cannot be rolled back (overwritten) [he] determined that there is no missing history or code reversal in any of the active branches within the NDR-2021 Azure repository." (Suppl. Rpt. 17-19).
- That no deployments were made to the Azure web server from the Azure DevOPS repository between 9/26/2021 and 1/18/2022 (Int. Rpt. 17-19).
- "Code could not have been deployed from the NDRs Azure repository on 1/13/2022 since all the deployed code and artifacts in the Azure DEVOPS would need to have the same date as the deployed runtime code on the website" and "the dates do not match." (Suppl. Rpt. 20-21).
- That potential changes in the virtual machine would not impact code that was previously committed to NDR's repository. (2d Suppl. Rpt. 3).

Plaintiff's documentary evidence, the admissions by Mr. Saul, and Mr. Patterson's reports demonstrate that Plaintiff has meritorious claims against Defendants for misappropriation of a trade secret under DTSA and common law, conversion, and breach of contract arising from Defendants' failure to save Plaintiff's source code on its repository, which can all be proven without Mr. Delorge's testimony since Email 1 and Email 2 are immaterial to these central claims. Therefore, dismissing Plaintiff's complaint as a result of Mr. Delorge's rogue act, is not supported by the facts of this case and the applicable law.

### D.     <u>Referral To The U.S. Attorney's Office Is Not Warranted</u>

While this Court has the authority to refer cases to the U.S. Attorney's Office for investigation into falsehoods made during civil litigation, such referrals should be reserved for "instances where a witness's lie is so material to the truth-seeking function of a trial." *United States v Cornielle*, 171 F.3d 748, 751 (2d Cir 1999). 18 U.S.C. § 1621 is the general perjury statute applicable to judicial and non-judicial proceedings, which makes it a crime for a witness testifying under oath to give "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *See United States v Dunnigan*, 507 US 87, 94

(1993). 18 U.S.C. § 1623 makes it a crime to knowingly make a false material declaration or use a document, while under oath and before a court or grand jury, knowing it to contain a false material declaration. Prosecution under §1623 requires the government to prove beyond a reasonable doubt that defendant knowingly made a false declaration or knowingly used a false document. *See*, *United States v Dudley*, 581 F.2d 1193, 1198 (5th Cir. 1978); *United States v Maxwell*, 534 F Supp 3d 299, 319 (S.D.N.Y. 2021) ("[t]estimony is perjurious only if it is knowingly false and is material to the proceeding in which the defendant offered it.)

Under both §1621 and §1623, "the test of materiality is whether the false testimony was capable of influencing the tribunal on the issue before it." See, *United States v Icardi*, 140 F. Supp 383, 388 (D.D.C. 1956). Likewise, 18 U.S.C. § 1622 criminalizes subornation of perjury, which requires the government to show beyond a reasonable doubt that (1) "the suborner should have known or believed or have had good reason to believe that the testimony given would be false;" (2) "should have known or believed that the witness would testify willfully and corruptly, and with knowledge of the falsity;" and (3) have "knowingly and willfully induced or procured the witness to give false testimony." See *Petite v United States*, 262 F.2d 788, 794 (4th Cir. 1959). The mere act of calling a perjuring witness to the stand in aid of one's case without doing "anything more to procure or instigate the perjury" does not constitute subornation of perjury. See *U.S. v. Livoti*, 22 F.Supp.2d 235, 250 (S.D.N.Y 1998).

Herein, there is a total lack of evidence on which this Court could reasonably find that Plaintiff or its counsel knew Email 1 was potentially altered at the time of its submission or had any involvement in the alleged alteration. As such, by submitting Mr. Delorge's declaration referencing and incorporating Email 1 or calling Mr. Delorge as a witness at the preliminary injunction hearing, neither Plaintiff nor its counsel knew, believed, or had reason to believe that the statements made in Mr. Delorge's declaration or the testimony he would provide with regard to Email 1 could be false.

14

Additionally, it cannot be said that Email 1 would have been material to this Court's decision on Plaintiff's motion for a preliminary injunction, a necessary element for finding that perjury was committed. Consequently, Plaintiff or its counsel's unintentional mistake of submitting Email 1 does not constitute the crime of perjury or suborning perjury under 18 U.S.C. §§ 1621, 1623 and 1622.

Even if this Court believes that Mr. Delorge may have committed perjury, it should not impute his misconduct on Plaintiff or its counsel, such that Plaintiff or its counsel should be referred to the U.S. Attorney for further investigation. It is not Plaintiff who allegedly altered Email 1 or has made any false statements to the Court or Defendants. Moreover, Plaintiff has not sought to defend or excuse Mr. Delorge's conduct and has cooperated with the Court's inquiry into the alleged altered document. It has further been recognized that in light of the heavy weight that a federal judge's perjury referral carries, courts should reserve their referral power for the most egregious of cases. *See Antidote Intern. Films, Inc. v Bloomsbury Pub., PLC*, 06-CV-6114 (JSR), 2007 WL 1834839, at *2 (S.D.N.Y June 26, 2007) ("such a referral should be reserved for cases in which the Court is of the view that the perjury has been established beyond a reasonable doubt"); *see also, Sec. and Exch. Commn. v Payton*, 176 F. Supp. 3d 346, 357 (S.D.N.Y 2016).

## CONCLUSION

For the reasons stated herein, it is respectfully requested that in light of the sheer absence of evidence that Plaintiff and its counsel acted in bad faith or intentionally set in motion some unconscionable scheme intended to impede this Court's impartial adjudication of Plaintiff's claims or prevent Defendants in developing their case, this Court should not sanction Plaintiff for the independent actions of Mr. Delorge or refer this matter to the U.S. Attorney's Office.

Dated: August 25, 2022

ALLYN & FORTUNA, LLP

By:

Nicholas Fortuna, Esq.
Paula Lopez

15