UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
NETWORK DATA ROOMS, LLC,                    Civil Case No.: 22-CV-2299-LSG

              Plaintiff,

-v-

SAULREALISM LLC and RYAN SAUL, in her
individual and professional capacities,
              Defendants.
----------------------------------------X

**AFFIDAVIT OF CHRISTOPHER CONCANNON SUBMITTED IN OPPOSITION TO THE IMPOSITION OF SANCTIONS AGAINST PLAINTIFF OR PLAINTIFF'S COUNSEL AND REFERRAL OF THIS MATTER TO THE U.S. ATTORNEY'S OFFICE**

STATE OF NEW YORK         )
                                 ) ss.:
COUNTY OF NEW YORK     )

CHRISTOPHER CONCANNON, being duly sworn, deposes and says:

       1.      I, along with my two sons, Thomas Concannon and Jack Concannon, am a member of plaintiff Network Data Rooms, LLC ("NDR"). I am fully familiar with the facts and circumstances set forth herein.

       2.      I have reviewed Defendants' counsel's letter dated August 5, 2022, in which she alleges that the email attached as Exhibit "A" to Mr. Delorge's declaration dated March 22, 2022 ("Email 1"), submitted in support of Plaintiff's preliminary injunction motion, was an altered version of an email dated January 16, 2021 between Mr. Delorge and Mr. Saul ("Email 2"), produced to Defendants during discovery, and this Court's Order to Show Cause dated August 16, 2022.

       3.      I state unequivocally that neither I, any of Plaintiff's members, nor Plaintiff's counsel would ever intentionally or knowingly submit an altered document as evidence to this Court. Moreover, neither I, any of Plaintiff's members, nor Plaintiff's counsel had any involvement

1

in the alleged alteration of Email 1, or believed it to be anything but genuine when it was submitted as an exhibit in support of NDR's motion for a preliminary injunction.

4. As part of the preparation of the complaint and preliminary injunction papers, I put NDR's attorneys in contact with Mr. Delorge, so that he could provide them with background and technical information about the DealTable code development project that Defendants had been working on until January 18, 2022.

5. On March 1, 2022, Mr. Delorge sent NDR's attorneys an email containing information about the work Ryan Saul was performing, and the technical aspects of the project and source code, to which he attached four attachments. I was copied on the email to NDR's attorneys.

6. One of the attachments to the email dated March 1, 2022 consisted of a pdf attachment named "Ryan Saul Repo Email october.pdf" (Email 1). Though I was copied on the email, I did not review it or the attachments, as it was directed to NDR's attorneys and they were the ones preparing the papers.

7. Moreover, I had no reason to believe that Mr. Delorge would provide inaccurate information or documentation to Plaintiff's counsel, as he had been a trusted consultant, having served as NDR's security consultant for more than a year.

8. I then first became aware of the discrepancies in Email 1 during the preliminary injunction hearings. After the first day of hearings, NDR's attorneys explained to me the irregularities in Email 1 that had been raised by Defendants' counsel during Mr. Delorge's cross-examination. I was surprised and angered by what I had learned.

9. I contacted Mr. Delorge to find out about the discrepancies in Email 1 and asked him if he had altered it. He denied any wrongdoing. I asked him numerous times to provide me with back-up showing that he had not altered Email 1 but he never provided anything.

10. Following this Court's Order to Show Cause, NDR's counsel advised Mr. Delorge to hire an attorney to represent him in connection with this hearing and since then, neither I, nor any members of NDR have communicated with Mr. Delorge regarding this matter.

11. Plaintiff in no way condones or excuses Mr. Delorge's conduct if, as alleged, he did alter Email 1. I do, however, believe that if Mr. Delorge did alter Email 1, it was not in support of NDR's claims against Defendants, but to illustrate that he was doing his job as NDR's security consultant and checking whether Mr. Saul was saving the code to NDR's repository.

12. Given that Mr. Delorge's alleged alteration of Email 1 was done without the knowledge or involvement of Plaintiff or its counsel, and Plaintiff's submission of Email 1 was a a result of an unintentional mistake by counsel, it cannot be said that Plaintiff has acted in bad faith or with fraud in its dealings with the Court and/or Defendants, warranting the dismissal of the action.

13. To the contrary, Plaintiff brought this action in good faith and for the sole purpose of recovering the source code that Defendants stole. NDR has asserted claims against Defendants for misappropriation of trade secrets under the 2016 Defense of Trade Secrets Act, 18 U.S.C. § 1836, et seq. and New York common law, as well as for conversion, and breach of contract. *(See* Complaint, Dkt #1).

14. On or about December 20, 2020, NDR entered into a Consulting Agreement with defendant Saulrealism LLC and defendant Ryan Saul as an officer of Saulrealism LLC and in his

individual capacity with regard to specific provisions of the Consulting Agreement ("Consulting Agreement"). *See* Dkt. No 9 (attachment 3).

15. The Consulting Agreement expressly provides that NDR is the owner of all work performed by Defendants relating to the DealTable VDR Platform software development project. *See* Id.

16. Also pursuant to the Consulting Agreement, Defendants agreed and acknowledged the substantial harm that NDR would suffer as a result of a breach of the Agreement by them and agreed to the following remedy provision:

> Consultant understands and acknowledges that Company's remedies at law for any material breach of this Agreement by Consultant are inadequate and that any such breach will cause the Company substantial and irrevocable damage and therefore, in the event of any such breach, in addition to such other remedies which may be available, including the return of consideration paid for this Agreement, Consultant agrees that the Company shall have the right to seek specific performance and injunctive relief. It is also expressly agreed that, in the event of such a breach, Company shall also be entitled to recover all of its costs and expenses (including attorneys' fees) incurred in enforcing its rights hereunder.

*See Id.* at ¶12.

17. Defendants continued to work on the development project until their termination on January 18, 2022. Immediately after Defendants' termination, Plaintiff learned that Defendants had deleted the DealTable website and marketing site, the DealTable application, the DealTable database and database connection, the DealTable website certificates, which were able to be restored.

18. Subsequently, Plaintiff learned that the source code that Defendants had written between September 26, 2021 and January 18, 2022 was not saved on NDR's repository. As a result, NDR has been unable to complete the development of the dealtable VDR platform.

19. Plaintiff's claims against Defendants arise out of the stolen source code, are meritorious, and can be established by credible evidence having nothing to do with Email 1. Firstly,

the Non-Disclosure and Consulting Agreements, which Defendants admit are binding on them (Tr. Pgs, 76-77) (Dkt. No. 37), establish that the source code Defendants were hired to write was the confidential property of Plaintiff, which Defendants were required to safeguard in accordance with company policy and return to Plaintiff upon termination of the consulting relationship. *See* (Dkt. No. 9 [attachments 2 & 3]).

20. In addition, Defendant Saul admits that he was the only code developer working on the project between September 26, 2021 and January 18, 2022. *See* Transcript, p. 99) (Dkt. No. 37).

21. Furthermore, the findings made by independent expert Terry Patterson establish that Mr. Saul did not save the source code he wrote between September 26, 2021 and January 18, 2022 to Plaintiff's repository. (*See* Dkt. Nos. 49, 58, 67.)

22. Based on the substantial evidence showing that Plaintiff has meritorious claims, and fact that neither Plaintiff nor its counsel had any involvement in the alleged alterations made to Email 1 or were aware of them at time of submitting Email 1 as an exhibit, this Court should permit Plaintiff to continue pursuing its valid claims against Defendants.

23. Moreover, since it has been shown that the potential act of perjury or false statement related to Email 1 was not committed by Plaintiff, any of its members, or its attorneys, there is no basis for this Court to impose sanctions or make a referral to the U.S. Attorney's Office.

_____
CHRISTOPHER CONCANNON

Sworn to before me this
26th day of August 2022
_____
Notary Public

RAGHUNATH TIBREWALA
NOTARY PUBLIC-STATE OF NEW YORK
No. 01TI6348952
Qualified in New York County
My Commission Expires 10-11-2024

5