UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NETWORK DATA ROOMS LLC,　　　　　　　　　　　　Index No. 22-CV-2299-LGS

　　　　　　　　　　Plaintiff,

　　　　-against-


SAULREALISM LLC and RYAN SAUL, in her individual
And professional capacities,

　　　　　　　　　　Defendants.
-------------------------------------------------------------------X


MEMORANDUM OF LAW IN SUPPORT

Nicholas Fortuna, Esq.
Paula Lopez, Esq.
Attorneys for Plaintiff
400 Madison Avenue, Suite 10D
New York, New York 10017
(212) 213 – 8844

TABLE OF CONTENTS

Preliminary Statement ……………………………………………………………………..………1

Argument ……………………………………………………………………………………............2

    I.    Standard of Review on a Motion for Reconsideration………………….…..…..……..2

    II.   Terry Patterson's Report Establishes that NDR has a Substantial Likelihood of Succeeding on the Merits……………………………………………………..………3

           A.    The Court Misapprehended the Scope of Terry Patterson's Review and Report………………………………………………………..….……..……….5

           B.    The Technical Functionality of Microsoft Azure Repositories Make it Impossible for David Delorge to Delete Code and Conceal its Deletion ..9

Conclusion …………………………………………………………………………………...13

## TABLE OF AUTHORITIES

<u>Cases</u> <u>Page</u>

*Bank Leumi Trust Co. of New York v. Istim Inc.*
    902 F.Supp. 46 (S.D.N.Y. 1995)……………………………………………………….3

*Norton v Town of Islip*
    04-CV-3079 NGG WDW, 2013 WL 84896 (E.D.N.Y. Jan. 7, 2013)………………2

*Shrader v CSX Transp., Inc,*
    70 F.3d 255 (2d Cir. 1995)……………………………………………………………..2

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*
    956 F.2d 1245 (2d Cir. 1992)…………………………………………………………..3

*Yurman Design Inc. v. Chaindom Enterp., Inc.*
    F.Supp.2d 2000 WL 217480 (S.D.N.Y. 2000)………………………………………3

<u>Statutes & Rules</u> <u>Page</u>

18 U.S.C. § 1836……………………………………………………..………………………3

Local Civil Rule 6.3……………………………………………………………………………….2

**PRELIMINARY STATEMENT**

Plaintiff Network Data Rooms, LLC ("NDR") respectfully submits this Memorandum of Law in support of its motion pursuant to Local Civil Rule 6.3 for an Order granting NDR's Motion for Reconsideration of the Court's Order dated September 23, 2022, denying NDR's application for a mandatory injunction. (Doc. #103). In its Order, the Court found that NDR "had not presented sufficient credible evidence to show a clear or substantial likelihood of success on the merits" based on the following findings:

1. That "Mr. Patterson's review was limited to a project named "NDR-2021"; and
2. That there remain open questions as to (i) "[w]hether Delorge was in a position to change anything that the expert reviewed, thus affecting his conclusions", and (ii) "whether Delorge could have deleted the code at issue and concealed the deletion."

NDR respectfully moves for reconsideration of the Court's order on the basis that the Court overlooked or misapprehended: (a) the scope of Mr. Patterson's review of NDR's Microsoft Azure Repository; (b) the established fact that code committed to a branch in a repository cannot be deleted; (c) the established fact that branches storing code cannot be rolled back to hide the deletion of code; and (d) that, while an entire branch (and the code on a branch) may be deleted, the branch and missing code can be found and restored as part of an exact name search. The foregoing was confirmed by Mr. Patterson in his independent report and overlooked by the Court. Additionally, the record before the Court established that the alleged branches identified by Defendant Saul—the sole developer responsible for writing and saving the missing code between September 26, 2021 and January 18, 2022, and the only one with knowledge of where such code was saved if, indeed, it had been saved to NDR's Microsoft Azure Repository, were checked by Mr. Patterson and found to either not exist at all in the case of a Net Road Show/ Net Roadshow branch or to not have any code saved to it after September 26, 2021 in the case of the Ryan Development branch. Defendant Saul did not identify

1

any branch on NDR's Microsoft Azure Repository to which he may have saved the missing code that was not checked by Mr. Patterson.

Therefore, had the Court not overlooked key findings contained in Mr. Patterson's report, the Court would have found that Defendant Saul's proffered testimony during the preliminary injunction hearing and in his declaration was not factually plausible. In light of how the Microsoft Azure System functions, as reported by Mr. Patterson, Mr. Saul's claim that he had saved the code to NDR's Microsoft Azure Repository and insinuations made by Defendants and their counsel that if the code is not in the repository now, it must have been deleted by David Delorge are not credible. As a result, the Court should have found that NDR established a clear or substantial likelihood of success on the merits irrespective of David Delorge's misconduct related to an email unrelated to the crux of NDR's claims, which was neither known nor condoned by NDR.

## ARGUMENT

### I.     STANDARD OF REVIEW ON A MOTION FOR RECONSIDERATION

Grounds for granting motions for reconsideration are: "(1) if the court overlooks critical facts; (2) if it overlooks controlling decisions that could have changed its decision, (internal citation omitted); (3) in light of an intervening change in controlling law; (4) in light of new evidence; (5) to correct clear error; or (6) to prevent manifest injustice." *See Norton v Town of Islip*, 04-CV-3079 NGG WDW, 2013 WL 84896, at *3 (E.D.N.Y. Jan. 7, 2013). A motion for reconsideration under Local Civil Rule 6.3 is properly brought when a moving party can demonstrate that the Court overlooked matters or controlling decisions which, had they been considered, might reasonably have changed the Court's decision. *See Shrader v CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.") *See also,*

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). The standard on a Local Civil Rule 6.3 motion "'precludes a party from advancing new facts, issues or arguments not previously presented to the court.'" *Yurman Design Inc. v. Chaindom Enterp., Inc.*, Not Reported in F.Supp.2d 2000 WL 217480 (S.D.N.Y. 2000) *citing Bank Leumi Trust Co. of New York v. Istim Inc.*, 902 F.Supp. 46, 48 (S.D.N.Y. 1995).

Herein, NDR respectfully submits that the Court should reconsider its motion for a preliminary injunction and, in light of the facts established in Mr. Patterson's reports and overlooked by the Court, grant the motion and direct Defendants to turn over to NDR the source code that was written by Defendants between September 26, 2021 and January 18, 2022, and is owned by NDR.

## II. TERRY PATTERSON'S REPORT ESTABLISHES THAT NDR HAS A SUBSTANTIAL LIKELIHOOD OF SUCCEEDING ON THE MERITS

At the outset, NDR believes that it met its burden in establishing a substantial likelihood of success on the merits of its claims against defendants Saul and Saulrealism LLC for misappropriation of trade secrets under the 2016 Defense of Trade Secrets Act, 18 U.S.C. § 1836, et seq. ("DTSA") and New York common law, as well as for conversion, and breach of contract *(see* Complaint, Doc. #1) based on Defendants' wrongful withholding of NDR's source code written by Defendant Saul between September 26, 2021 and January 18, 2022. This is based on the findings made by Terry Patterson that the code was **never** saved to NDR's Microsoft Azure DevOps repository.

The credible facts before the Court on NDR's motion for a preliminary injunction establish that Defendant Ryan Saul and his company Saulrealism had entered into a consulting agreement with NDR to serve as Lead Code Developer in connection with the development of NDR's DealTable Virtual Data Room platform. (*See* Saul Declaration (Saul Decl.), Doc. #24 at ¶¶ 5-8; *Consulting Agreement* Doc. #9-3). In addition, Defendants were bound by a non-disclosure agreement, requiring them to protect and safeguard NDR's confidential information including, but not limited to its source

3

code, and return NDR's property to it following the termination. *See Non-disclosure Agreement,* Doc. # 9-1*).* It was further established that after August 2021, defendant Saul was the only code developer working on the project. (*See* Saul Decl. at ¶20-22). As such, defendant Saul was the only person in possession and control of NDR source code written between September 26, 2021 and January 18, 2022. The DealTable Virtual Data Room on-line platform reflects the features and functions of the code written by defendant Saul between September 26, 2021 and January 18, 2022, in compiled form. (*See* Patterson Int. Rpt (Doc #49, p. 13), Suppl. Rpt. (Doc. #58, pp. 20-21).) However, the decompiled code saved on NDR's DevOps repository does not match the compiled code reflected on the DealTable Virtual Data Room on-line platform.

The facts before the Court also establish that Defendant Saul, as the only person who wrote the code between September 26, 2021 and January 18, 2022, was the only person in possession of the source code during that period and the only person who would know where on NDR's repository he saved the source code if, indeed, it had been saved to the repository. Defendant Saul, in his declaration and through his testimony, identified two contradictory locations on NDR's entire DevOps repository where he saved code—Ryan Development Branch and Net Roadshow branch (*See* Saul Decl. ¶34; Hearing Tr. (Doc. #37) pp. 80, 82, 96 & 107). A search for the source code in those branches was conducted. No source code between September 26, 2021 and January 18, 2022 was found to have ever been saved in the Ryan Development branch in the first place, let alone saved and subsequently deleted. No such branch called Net Roadshow or Net Road Show was found by Mr. Patterson. This is significant because NDR's claim is not that defendant Saul deleted the missing code from its repository but that he failed to save it there in the first place, in effect stealing the code. Mr. Patterson's findings and report provide undisputed confirmation for Plaintiff's claims and render Defendants' proffered explanation of where the code is or where it may be, entirely implausible.

**A.      The Court Misapprehended the Scope of Terry Patterson's Review and Report**

As stated by the Court in its Order, Terry Patterson was appointed on May 10, 2022 to review NDR's Microsoft Azure Repository. (*See* Doc. #42.) As part of his independent review, Mr. Patterson prepared three reports, which were filed with the Court on June 7, 2022 (Int. Rpt.), June 30, 2022 (Suppl. Rpt.), and July 27, 2022 (2d Suppl. Rpt.) (*See* Doc. #s 49, 58, 67). The findings made by Mr. Patterson establish that Mr. Saul did not save the source code he wrote between September 26, 2021 and January 18, 2022 to any location on Plaintiff's repository.

In its Order, the Court notes that "NDR has twelve other projects on the DevOPS account" but incorrectly finds that "Mr. Patterson's review was limited to a project named "NDR-2021." While the crux of Mr. Patterson's reports reference the NDR-2021 project, this is not because this was the only project he reviewed but likely because this was the only active project during the relevant time. The Court's finding on this issue overlooked statements and findings made by Mr. Patterson throughout his report establishing that he was given ***"full administrative access"*** to NDR's systems (Int. Rpt. at p. 2) and that he reviewed "***all the active NDR Azure DEVOPS projects and all active branches in each project.***" (Suppl. Rpt. at p. 12). As such, Mr. Patterson's conclusion that defendant Saul ***never committed* code to NDR's repository between September 26, 2021 and January 18, 2022,** is based on a complete review of the entirety of NDR's DevOps account and not a limited review of only the NDR-2021 project, as misapprehended by the Court. In fact, there are numerous findings and statements contained in Mr. Patterson's reports, as noted below, which we believe the Court must have overlooked, in order to incorrectly find that "Mr. Patterson's review was limited to a project named "NDR-2021."

5

**Suppl. Rpt[1].**

| 1.4 | On page 20 of the report, it summarizes that there were no decompiled source comments (*sic*) made to the Azure DevOps repository after 9/26/2021. It further states that there were no deletes made in the NDRs Azure DevOps repositories, and that the repository logs cannot be altered. In support, as screen print of the "Dealtable Development" branch is shown. Based upon that one screen print, is your assessment limited to that no decompiled code was deposited to the Dealtable Development" branch, and that branch's repository log cannot be altered? | |
|---|---|---|
| 1.4.1 | **Reviewer Comments:**<br>1. I checked all the branches and there are no deleted branches https://docs.microsoft.com/en-us/azure/devops/repos/git/restore-deleted-branch?view=azure- devops<br>2. What I referred to as repository logs is actually Branch history which cannot be altered in: Azure  DEVOPS: https://github.com/MicrosoftDocs/azure-devops-docs/issues/4295<br><br>**Reviewer Summary**<br><br>1. It is my assessment that there was no code deposited to any of the branches in the NDR-2021 source  code repo after 9/26/2021.<br>2. *My assessment is not limited to the Development Branch since my review covered all the active NDR Azure DEVOPS projects and all active branches in each project* (emphasis added)*.*<br>3. It is also my assessment that the branch history cannot be altered in the Azure DEVOPS repos. | P. 12 |

**Int. Report**

| Scope of Review Summary | | |
|---|---|---|
| Date | Description | |
| 5/24/2022 | Received instructions and credentials to login to the NDR systems with *full administrative access* (emphasis added)*.* | P. 1 |
| 5/24/2022 | Received user account and password to login to the NDR systems. | P. 1 |
| | | |
| **Timelines for documentation and system review** | | |
| 6/4/2022 | Started review of Office 365 tenant, Azure DevOps repository and Azure subscription | P. 2 |

---

[1] References to Mr. Patterson's reports are reproduced herein in a similar format to the original reports.

| | | |
|---|---|---|
| 6/5/2022 | Continued review of Office 365 tenant, Azure DevOps repository and Azure subscription. I was not able to login to the Virtual Machine to complete review. | P. 2 |
| 6/6/2022 | Continued review of Office 365 tenant, Azure DevOps repository and Azure subscription and Virtual Machine. Instructions provided and I was able to login to the Virtual Machine. | P. 2 |
| | | |
| **Scope of Review Details** | | |
| 3 | Review, assess and report on the files and branches that exists in NDR's Azure DEVOPS  repository and/or were created between September 26,2021 and January 18,2022 including  but not limited a branch called "Net Roadshow" or "Net Road Show" | |
| 3.1 | **Reviewers (*sic*) Comments** <br><br>1. There is a master repository and 13 branches in the NDR-2021 source repository <br><br>2. There were no code commits to any branches in Azure DevOPS including branches "Net  Roadshow" or "Net Road Show" any time between 9/26/2021 and 1/18/2022. <br><br>**Reviewer Summary** <br><br>1. I have assessed that Ryan Saul did not commit any code changes made between 9/26/2021   and 1/18/2022 to ***any branch in NDRs Azure DevOPS repositories*** (emphasis added). | P. 8 |
| | | |
| 5 | Review, assess and report on whether Ryan Saul saved all code developed between September 26,2021 and January 18,2022 in the Azure DevOPS repository. | |
| 5.1 | **Reviewers (*sic*) Comments** <br><br>1. Change logs track all changes, including new commits, made to an Azure DevOPS repository for audit and compliance. <br><br>2. Ryan Saul committed last updates to Azure DevOPS were on 9/26/21 at 9.32 am based on Azure DevOPS tracking logs. <br><br>**Reviewer Summary** <br><br>1. It is my assessment that that no code was saved to the Azure DevOPS repository between 9/26/2021 and 1/18/2022. | P. 12 |

7

| | | |
|---|---|---|
| 7 | Review, assess, and report as to the last date decompiled source code was committed to any branch on NDRs Azure DEVOPS repository including but not limited to branches called "Net Road Show" and "Ryan Development" | |
| 7.1 | **Reviewers (*sic*) Comments**<br><br>1. The last build on the web site shows a build date of 1/13/2022 and the Azure repository shows last code was uploaded to NDRs Azure DEVOPS repository on 9/26/2021<br><br>2. I checked all the code repositories and branches to validate that there were no code updates made to any of the NDRs Azure DEVOPS repositories by anyone between 9/26/2021 and 1/18/2022.<br><br>**Reviewer Summary**<br><br>1. It is my assessment that no code was committed *to any braches (sic) in NDRs Azure DEVOPS repository between 9/26/2021 and 1/18/2022* (emphasis added). | P. 15 |
| | | |
| 9 | Review, assess and report on whether Ryan Saul deployed all code deployed between September 26,2021 and January 18,2022 from Azure DevOPS repository | |
| 9.1 | **Reviewers (*sic*) Comments**<br><br>1. Code in the Azure DevOPS repository is not the latest code, it was last updated on 9/26/2021.<br>2. There are missing code updates in the Azure DevOPS repository which indicate code was likely deployed from another source.<br><br>**Reviewer Summary**<br><br>1. *It is my assessment that no deployments were made to the Azure web server from the Azure DevOPS repository between 9/26/2021 and 1/18/2022* (emphasis added). | P. 17 |
| | | |
| 17 | Review, assess and report on any other information and records the independent expert deems pertinent. | |
| | **Reviewers (*sic*) Comments**<br><br>1. Some Azure logs are not available, so I am not able to independently verify some of the user level transactions during for period 9-26-2021 through 1-18-2022 so I have opted out of | P. 26 |

8

|  | those assessments which include scope of review items (8), (13) and (14).<br>2. I have reviewed the court transcripts and signed declarations of both parties.<br>3. I have reviewed screen prints and statements made by both parties<br>4. **I have identified that screen prints provided by NDR look authentic and are accepted by the courts as evidence** (emphasis added).<br>5. **I do not know or support any party in this case and an (sic) independent expert** (emphasis added).<br>6. **I have not received direction or communicated with any party during this review outside of the approved Order Re-Scope of Review** (emphasis added).<br>7. I believe my assessments to be accurate based on my over 35 years of working as a consultant, developer, and security architect in this industry. |  |

It is further submitted that if the Court still has questions about the scope of Mr. Patterson's review despite everything shown herein, the Court should refrain from deciding this motion until after the Court has the opportunity to obtain clarification and have its questions answered directly by Mr. Patterson at the hearing scheduled for October 27, 2022.

**B.    The Technical Functionality of Microsoft Azure Repositories Make it Impossible for David Delorge to Delete Code and Conceal Its Deletion**

A further basis for reconsideration of the Order denying NDR's motion for a preliminary injunction, is that the Court erred in concluding that Mr. Patterson's reports leave open questions as to (i) "[w]hether Delorge was in a position to change anything that the expert reviewed, thus affecting his conclusions", and (ii) "whether Delorge could have deleted the code at issue and concealed the deletion." Had NDR alleged that the code was deleted by Mr. Saul, the Court's finding that open questions exist as to whether Mr. Delorge could have deleted the code in light of his past misconduct,

could be justified as a basis for denying mandatory injunctive relief[2]. However, NDR's claim is that defendant Saul failed to save the code to NDR's repository at any time between September 26, 2021 and January 18, 2022 and Mr. Patterson's report establishes that there was never any code saved at the locations identified by Mr. Saul after September 26, 2021 (Ryan Development branch) or at any time (Net Roadshow), so there was nothing ever there to delete. Therefore, in light of the fact that the missing code, which was written by defendant Saul and exclusively in his possession from the time it was written, was never saved to the repository in the first place, any open questions as to who may have deleted such code is not a sound basis for finding that NDR failed to meet its burden.

Moreover, the "open questions" identified by the Court were conclusively answered by Mr. Patterson's reports, which established that once code is saved to a Microsoft Azure Repository, the system does not allow the permanent deletion of code. Therefore, if, at any time, code had been saved and then deleted from NDR's DevOps repository, there would have been a record of such deletion. Mr. Delorge would not have been able to change or conceal any such deletions, and Mr. Patterson would have found such a record and reported on it. For the Court to find otherwise means the Court must have overlooked the following key findings in Mr. Patterson's reports:

**Suppl. Rpt.**

| 1.5 | Can entire branches of code be deleted? Would a deleted branch appear in the current branches folder? Was there any attempt to search for an "exact match in deleted branches" for branches "Net Roadshow" or "Net Road Show?" (see, https://docs.microsoft.com/en-us/azure/devops/repos/git/restore-deleted-branch?view=azure-devops). | |
|---|---|---|
| 1.5.1 | **Reviewers Comments** | PP. 15-16 |

---

[2] Moreover, if this case was based on the deletion of code, NDR would not be seeking a mandatory injunction from the Court and would likely not even have brought this action because anything deleted from the Azure DevOps system would have been recoverable and the code developer hired to replace Saul would have found the code and been able to resume working on the code and finish the DealTable VDR Platform. Completing the software and launching the platform would have been far more cost effective than pursuing its claims against Defendants (despite NDR's contractual right to recover its attorney's fees from Defendants), and delaying the launch of the DealTable VDR Platform.

|  | 1. Entire branches can be deleted, and deleted branches would show up in the search under deleted branches only if the exact "branch name" is used in the search.<br>2. https://docs.microsoft.com/en-us/azure/devops/repos/git/restore-deleted-branch?view=azure- devops<br>3. There are no deleted branches in this Azure Repo for branches named "Net Roadshow" and/or "Net Road Show" based on searches completed in the NDR-2021 repo.<br><br>**Reviewer Summary**<br><br>1. I have assessed that there are no deleted branches in the NDR-2021 repo for branches that match exact names "Net Roadshow" and/or "Net Road Show" based on the exact name search. |  |
|---|---|---|
|  |  |  |
| 1.8 | Can branches be permanently deleted without the possibility of restoration? Can Azure DevOps be "rolled-back" to reflect earlier instances in time, where a branch was developed but is no longer accessible? |  |
| **1.8.1** | **Reviewers Comments**<br><br>1. Branches are always recoverable, there is no retention period for deleted branches. https://docs.microsoft.com/en-us/azure/devops/repos/git/restore-deleted-branch?view=azure-devops<br>2. Existing branches cannot be rolled back.<br><br>**Reviewer Summary**<br><br>1. Since branches cannot be rolled back (overwritten) I have determined that there is no missing history or code reversal in any of the active branches within the NDR-2021 Azure repository. | P. 19 |

**Int. Report**

| 9 | Review, assess and report on whether Ryan Saul deployed all code deployed between September 26,2021 and January 18,2022 from Azure DevOPS repository |  |
|---|---|---|
| 9.1 | **Reviewers (*sic*) Comments**<br><br>1. Code in the Azure DevOPS repository is not the latest code, it was last updated on 9/26/2021.<br>2. There are missing code updates in the Azure DevOPS repository which indicate code was likely deployed from another source.<br><br>**Reviewer Summary** | P. 17 |

11

|      |                                                                                                                                                                                                                                                                                                                                                                                                                   |       |
|------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|
|      | 1. *It is my assessment that no deployments were made to the Azure web server from the Azure DevOPS repository between 9/26/2021 and 1/18/2022* (emphasis added).                                                                                                                                                                                                                                                 |       |
|      |                                                                                                                                                                                                                                                                                                                                                                                                                   |       |
| 12   | Review, assess, and report on whether any decompiled code from between September 26,2021 and January 18,2022 was saved into NDRs Azure DevOPS repository but at some point, deleted?                                                                                                                                                                                                                              |       |
| 12.1 | **Reviewers (*sic*) Comments**<br><br>1. Azure DevOPS repository shows no deletions were made from NDRs Azure DevOPS repository.<br>2. *The repository logs cannot be altered* (emphasis added).<br><br>**Reviewer Summary**<br><br>1. I have assessed that there were no deletes made in the NDRs (*sic*) Azure DevOPS repositories. | P. 20 |

Had the Court not overlooked the factual record established by Mr. Patterson's reports, the Court should have found that NDR met its burden of presenting sufficient credible evidence that defendant Saul never saved the source code written between September 26, 2021 and January 18, 2022 to NDR's DevOps repository. Because that fact has been established, NDR has shown a substantial likelihood of success on the merits of its claims against Defendants misappropriation of its trade secrets under the DTSA and New York law (*see* NDR's Memo of Law in Support of Preliminary Injunction ("Prel. Inj. Memo", Doc. #9-6 at pp. 6-13), conversion (*see* Doc. #9-6 at pp. 13-14), and breach of contract (*see* Doc. #9-6 at pp. 14-18).

Additionally, as fully discussed in NDR's Prel. Inj. Memo, in both the consulting and nondisclosure agreements entered into by Defendants, they acknowledge NDR's entitlement to injunctive relief and the "substantial and irrevocable damage" that would result from Defendants' breach of those agreements. Moreover, NDR has shown that Defendants' conduct in refusing to return NDR's source code has prevented it from making the necessary edits and updates needed to complete the DealTable VDR Platform it was on the precipice of finishing at the time of Defendants'

misconduct. Defendant Saul's actions have paralyzed NDR's ability to complete the project and launch the DealTable VDR Platform, which it has been working towards for the last three years, and on January 18, 2022, was only a month or two from completing. *See* Concannon Decl, (Doc. #9-1, ¶42.) Additionally, the factual evidence as to balance of the equities weighs in NDR's favor, as it is merely seeking to recover property that belongs to it and which Defendants have wrongfully withheld by not saving it on NDR's DevOps repository, as they were required to do.

## **CONCLUSION**

For all the foregoing reasons, NDR respectfully requests that the Court reconsider its Order under Local Civil Rule 6.3 and grant the motion for a preliminary injunction in its entirety.

Dated: October 5, 2022                    ALLYN & FORTUNA, LLP

                                          By:     _____/s/_____
                                                  Nicholas Fortuna, Esq.
                                                  Paula Lopez